## THE NANNIE LAMBERTON.

### THE FANNIE P. SKEER.

### THE ROLLIN H. WILBUR.

### EMPIRE TRANSP. CO. v. THE NANNIE LAMBERTON et al.

### KIERNAN v. SAME.

(District Court, S. D. New York. December 11, 1896.)

TUG AND TOW MEETING STORM—DUTY TO MAKE EXAMINATION BEFORE ENTERING ROUGH WATER.

The tug N. L., with two other tugboats, came up through the Kills in threatening weather, with a large number of canal boats in tow. They went out of the Kills between 12 and 1 a. m. in a westerly gale, blowing 31 miles an hour, and in the rough weather of the upper bay the tugs were unable to handle the tow well, and several of the boats foundered from the rough seas. *Held*, that the tugs were in fault for leaving the Kills in such weather without the customary previous examination of the condition of the water and weather outside.

Macklin, Cushman & Adams, for libelants.
Goodrich, Deady & Goodrich, for claimants.

BROWN, District Judge. I do not think it necessary to make any extended reference to the testimony in the above cases. I am persuaded that there was not on the part of the tugs the exercise of that reasonable prudence which is necessary and customary before taking a tow out of the Kills into the bay in threatening weather. It is evident that after this fleet got into the bay, it experienced very rough weather. The three tugs were, in fact, insufficient to handle the tow efficiently. While in the Kills, the wind was naturally much less felt, as is well known. The necessity of caution in leaving the Kills when the weather is unpromising is well understood; and in many cases the practice of sending out a tug in advance to observe the weather in the bay, before taking out the tow, has been proved before me; and if there were no such proof, considering the dangers likely to be encountered in the bay on moving from a partly sheltered to an exposed situation, the necessity of such examination would be an obligation of reasonable prudence. The evidence indicates also that on this same night at about the time the defendants came out, a Pennsylvania tow made

such previous examination, and did not come out till morning, though better equipped in force than the defendants' tugs.

The weather in this case was unpromising from the time the tow left Perth Amboy. It was rough, and blew a gale when crossing Newark Bay. This was itself sufficient notice of the necessity of special caution before leaving the Kills. Between 12 and 1, when the tow left the Kills, it was blowing 31 miles an hour—a smart gale from the westward—altogether dangerous for such a tow of open boats to meet. I do not find sufficient evidence to charge the tow injured with any fault, or with any degree of unseaworthiness. The very rough night affords, it seems to me, a reasonable explanation of all the defendants' criticisms.

Decrees for the libelants, with costs.