### THE NANNIE LAMBERTON et al.

### EASTON & AMBOY R. CO. v. KIERNAN et al.

### SAME v. EMPIRE TRANSP. CO. et al.

(Circuit Court of Appeals, Second Circuit. January 7, 1898.)

### Nos. 37–38.

1. TOWAGE—NEGLIGENCE—ROUGH WEATHER.

Tugs are not liable for loss of tows resulting from proceeding into open waters in rough weather, unless the decision of their masters to do so was one which nautical experience and good seamanship would condemn as inexpedient and unjustifiable under the circumstances then prevailing. They are not, however, to be exonerated merely because they acted honestly; and it must appear that they acted with an honest intent to do their duty, and in the exercise of the reasonable discretion of experienced navigators.

2. SAME.

Tugs starting out through the Kills into the Bay of New York, with a fleet of uncovered canal boats, in a westerly gale, blowing 31 miles an hour, *held* in fault for the loss of some of the boats from rough water in the upper bay. 79 Fed. 121, affirmed.

Appeal from the District Court of the United States for the Southern District of New York.

These were libels in rem against the tugs Nannie Lamberton, Fannie P. Skeer, and Rollin H. Wilbur, to recover damage for loss of canal boats while in tow by them. The circuit court found that the tugs were in fault, and rendered a decree for the libelants, with costs. 79 Fed. 121. The claimants of the tugs have appealed.

E. B. Whitney, for appellants.

Jas. J. Macklin, for appellees.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

PER CURIAM. While on a voyage from Perth Amboy, N. J., to New York City, 2 vessels (one the canal boat Annie and Lucy, and the other the barge No. 62), part of a flotilla of 40 vessels in tow by the three steam tugs of the appellants, encountered such heavy seas that they sunk, and were lost, with their cargoes. The two vessels were practically without decks or overhead covering. The flotilla left the Kills, and proceeded into the upper bay, about 1 o'clock in the morning of April 3, 1896. The Annie and Lucy foundered about two hours later in the vicinity of Robbins Reef, and the barge No. 62 foundered about 10 o'clock in the forenoon in the vicinity of Liberty

Island. These actions were brought by the owners and masters of the vessels to recover their damages occasioned by the loss, upon the theory that the tugs were negligent in prosecuting the voyage in the weather conditions prevailing when and after the flotilla left the Kills, and in failing to render necessary assistance to the vessels when they were in distress. The court below condemned the tugs upon the ground of their negligence in leaving the Kills with the tow in the then state of the weather. The evidence in the record is very conflicting, and consists almost wholly of the testimony of those who were on board the vessels. The case presents the issue of fact whether, in view of the storm indications, it was consistent with the exercise of reasonable discretion on the part of those in command of the tugs to proceed beyond the shelter of the Kills to the exposed waters of the bay. The disaster which befell the voyage supplies the knowledge that comes after the event, but it does not necessarily impeach the judgment of those who decided previously that it was safe to start. They are not to be charged with negligence unless they made a decision which nautical experience and good seamanship would condemn as presumably inexpedient and unjustifiable at the time, and under the particular circumstances. On the other hand, they are not to be vindicated merely because they may have erred honestly. They are to be exonerated if they acted with an honest intent to do their duty, and in the exercise of the reasonable discretion of experienced navigators. The Hercules, 19 C. C. A. 496, 73 Fed. 255. Applying this rule of liability, we are not justified in disturbing the conclusion of the court below. All the witnesses were examined in the presence of the district judge, and, as to all questions of fact depending upon the credit to be given to their observations, we should defer to his judgment, and better opportunity to criticise their intelligence and apparent veracity. All the witnesses for the libelant were boatmen, who were familiar with the voyage, and had many times made voyages with vessels in tow of tugs across the bay. They testified that the wind had been blowing 25 miles an hour during the afternoon,—sometimes harder, and sometimes less,—but that, when the flotilla was about leaving the Kills, it was blowing 30 miles an hour, that the bay was rough with whitecaps, and, as the flotilla entered it, the boats jumped and rolled heavily. According to the record of the weather bureau, showing the velocity and direction of the wind in the vicinity, it was blowing from the west or northwest during the preceding afternoon, and throughout the night,—between 10 and 11 o'clock of the preceding evening, at 22 miles an hour; between 11 and 12 o'clock, at 16 miles an hour; and between 12 and 1 a. m., at 31 miles an hour. Storm signals had been displayed in the afternoon, and were maintained throughout the night. These signals were visible across the bay. The district judge was of the opinion that a wind of 31 miles an hour was a dangerous one for such a tow to meet upon the waters of the bay, and in this opinion we coincide. We cannot accept the theory of the tugs, that the wind had abated when they put out from the Kills. It did abate temporarily during the following hour, and then increased again; but it was more violent when the flotilla started than it was when the vessels foundered,

or at any other period of the voyage. The utter indifference manifested by the tug master in command of the flotilla while the vessels that were lost, and others, were in distress, is suggestive, and permits an inference of his recklessness which reflects upon the character of his judgment in concluding to leave the Kills. The circumstances attending the foundering of the Annie and Lucy sufficiently account for the disaster to her, without necessitating very critical inquiry into the question of her seaworthiness. The argumentative suggestion of her unseaworthiness has very little evidence to support it. The decrees are affirmed, with interest and costs.