## THE EASTERN.

(Circuit Court of Appeals, Second Circuit. March 6, 1922.)

No. 135.

1. **Towage** ⊜⟹11(3, 4)—**Tug not insurer of tow; mere error of judgment of master of tug not negligence.**

A tug is not an insurer of her tow, and her navigators are not to be charged with negligence in management unless their decision is one that nautical experience and good seamanship would condemn as unjustifiable at the time and under the circumstances.

2. **Towage** ⊜⟹11(10)—**A tug held not liable for damage to tow.**

A tug *held* not liable for damage to barges in tow, which she was obliged to cast loose during a very severe storm because of the failure of the master to sooner start for a port of refuge where the immediate cause of the disaster was a change in the direction and great increase in the violence of the winds.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty by F. Dougherty & Co. against the steam tug Eastern; the Eastern Transportation Company, claimant. Decree for respondent, and libelant appeals. Affirmed.

⊜⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Leonard J. Matteson, Harrington, Bigham & Englar, and T. Catesby Jones, all of New York City, for appellant.

Pierre M. Brown, and Macklin, Brown, Purdy & Van Wyck, all of New York City, for appellee.

Before ROGERS, HOUGH and MANTON, Circuit Judges.

HOUGH, Circuit Judge. Libelant owns the barges Severn and Merrimac, which were the second and third vessels in a tandem tow of three which left New York on the afternoon of April 8, 1918, bound for Norfolk, Va., in charge of claimant's tug Eastern.

Twenty-four hours later the tow was off Delaware Entrance, when, owing to stress of weather, the Eastern endeavored to make the Breakwater. At 5:30 p. m. the tow was about passing the Five Fathom Lightship. It continued on a course substantially S. W. ½ S. until 6:45 p. m., when the tug turned and steered for the Breakwater. At about 9:30 p. m. the weather became worse, and from thence on for more than 24 hours one of the worst storms ever recorded prevailed in the neighborhood of Delaware Entrance.

The tug persisted with her tow of three boats until between 4 and 5 a. m., when signal was given to "Let go stern barge," which meant that the third boat in tow should anchor. A little later another and similar signal was given, and when relieved of two barges the Eastern ultimately managed to get herself and what was left of her tow into the Breakwater.

The barges left behind belonged to libelant. The Merrimac anchored, but could not hold, and was ultimately driven on Rehoboth Beach. The Severn, in the opinion of her master, could not anchor until it could "get astern of the Merrimac, * * * and by the time I got astern the barge was in the breakers," and thus this vessel went ashore at substantially the same place without anchoring at all.

The definite charges of fault made in the libel are in substance that the tug left New York harbor in the face of such threatening weather as to make it negligent to enter upon the voyage. These charges wholly failed, and after all the testimony had been adduced before the trial judge libelant obtained leave to add two more charges of fault:

(1) In that the steam tug Eastern failed to put into Delaware Breakwater when the master decided that the weather conditions were such that he should put in.

(2) In that the steam tug Eastern failed to make any allowance for leeway after the Eastern headed for Delaware Breakwater.

As explained in very careful argument, these allegations mean that it was negligence producing liability for the Eastern to fail to turn sharply at the Five Fathom Lightship and make for the Breakwater. It was negligence to continue to the south for about an hour and a quarter because the danger conditions were so manifest when off the Lightship that the time spent in going further south made the difference between getting into the Breakwater and not getting in before the violent storm broke. In other words, the complaint is that the tug did not soon enough turn and run for a harbor of refuge.

[1] There is no doubt about the law; the tug was not an insurer,

negligence must be affirmatively shown, not presumed, and navigators are not to be charged with negligence unless their decision is one that nautical experience and good seamanship would condemn as unjustifiable at the time and under the circumstances. The Clarence L. Blakeslee, 243 Fed. 365, 156 C. C. A. 145, and cases cited. To the same effect the later cases of Aldrich v. Pennsylvania, etc., Co., 255 Fed. 330, 166 C. C. A. 500, and The W. H. Baldwin (C. C. A.) 271 Fed. 411. The matter was summed up by this court in The Nannie Lamberton, 85 Fed. 983, 29 C. C. A. 519:

"The disaster which befell the voyage supplies the knowledge that comes after the event, but it does not necessarily impeach the judgment of those who decided previously that it was safe to start [on the voyage in question]. They are not to be charged with negligence unless they made a decision which nautical experience and good seamanship would condemn as presumably inexpedient and unjustifiable at the time and under the particular circumstances. * * * They are not to be vindicated merely because they may have erred honestly. They are to be exonerated if they acted with an honest intent to do their duty, and in the exercise of the reasonable discretion of experienced navigators."

[2] It would serve no purpose to go over the evidence in detail in the light of these decisions; it has been done by the District Judge, with whose conclusions we agree. Suffice it to say that in our judgment it was a matter fairly within the discretion of the master of the Eastern whether (at Five Fathom Light) to continue going south for Chesapeake, or to turn in for the Delaware Breakwater. Action depended upon which way the wind would shift, for all agreed that had it shifted to the N. of E. it was safer to keep on south. Again, nothing appeared at the Lightship to show that it would be any more difficult to get into the Breakwater from a point an hour to the southward than it was from the Lightship itself. Decision was doubtful, as is sufficiently shown by the opinion of the master of the Merrimac, a sailing master of more than 40 years' experience, who testified frankly that he did not know what he would have done if he had been called on to decide whether to turn in at Five Fathom Bank or not.

Particularly do we agree with the lower court in finding that the immediate cause of disaster was a change in the direction of and great increase in volume of wind between 9:30 and 10 p. m. We discover no reason why the Eastern's master should have expected such a stormburst either when he was off the Lightship or when he turned for Delaware Entrance.

The decree appealed from is affirmed, with costs.