## THE KATIE E.

### MADEIRA HILL & CO. v. NEVILLE et al.

### No. 11087.

District Court, E. D. New York.
Jan. 22, 1931.

Single & Single, of New York City (William J. Mahar, of New York City, of counsel), for libelant.

Thomas A. McDonald, of New York City, for respondent Katherine E. Malia.

Macklin, Brown, Lenahan & Speer, of New York City (Carl F. Vander Clute, of New York City, of counsel), for respondent Port Reading R. Co.

BYERS, District Judge.

The libelant is the owner of the cargo of about 350 tons of coal laden on the barge Katie E., which sank at Pier No. 9, Stapleton, Staten Island, on December 8, 1927, at about 11:30 p. m., as the result of circumstances hereinafter to be stated.

The respondent Neville operated and the respondent Malia owned the said barge. The former made the contract with the libelant for the transportation of the cargo. The respondent and claimant Port Reading Railroad Company owns the steam tugs Bern and Ashbourne, that towed the fleet of barges of which the Katie E. was an element; that is to say:

The said tugs on December 8, 1927, left Port Reading with a tow of eighteen loaded barges, bound for New York Harbor. The tow was arranged in six tiers, three boats in each. The Katie E. was on the starboard side in the third tier, and ahead of the barge C. D. H. Webber.

The flotilla proceeded eastward through the Kills, there being a wind blowing from the northwest; the weather report shows that the wind movement, from 5 to 6 o'clock, was 35 miles at the Whitehall building, with a maximum of 42 miles; from 6 to 7 o'clock, 32 miles, with a maximum of 39; from 7 to 8 o'clock, 36 miles, with a maximum of 41; from 8 to 9, 41 miles, with a maximum of 49; from 9 to 10, 37 miles, with a maximum of 42; and from 10 to 11, 34 miles, with a maximum of 38. The weather was clear.

Under these conditions, at approximately 9:30 p. m., the steam tugs with the tow left the protection of the Kills and proceeded across the open waters of New York Bay, reaching a point just beyond Robbins Reef; at that time the tide was running flood. There the captain of the tug Bern, being in command of the fleet, rounded to into the wind, and proceeded back toward Stapleton, Staten Island, because of the stress of weather, i. e., increasing wind.

Reaching Pier No. 5, Stapleton, the captain of the Bern, having learned that the barge Katie E. was in distress, boarded the Ashbourne, which was acting as an assisting boat throughout the voyage, and proceeded back to the Katie E., and she was cut out of the tow and brought to Pier No. 9, Stapleton, and, while in the act of making fast two lines to the pier, the barge sank.

The freeboard of the Katie E. was about seven or eight inches amidships and about two feet at the bow and approximately a foot and a half at the stern.

There is no dispute in the testimony that this barge was not in difficulty until after the turning movement which brought her to the weather side of the tow where it was exposed to the full effect of the wind and waves; in other words, while she occupied a lee berth in the tow, she was protected, and gave no trouble.

The captain of the tug Bern had towed a fleet of light barges from New York to Port Reading during the morning of the day in question, and he says the weather was not bad, and that he looked for no storm warnings when he left New York Harbor; further, "The truth is we never look at them."

As a matter of fact, the weather report for that day contained the following, under the heading of "Notes":

"Continue southwest storm warning four P. M. Eastport to Delaware Breakwater. Disturbance of marked intensity over Ontario moving northeastward will cause strong west winds Nantucket to Delaware Breakwater tonight and possibly Friday morning, and strong south shifting to west winds Nantucket to Eastport this afternoon, tonight and probably Friday."

When the tow left Port Reading, the wind was light from the northwest, and no difficulty was encountered through the Kills; proceeding thence and up the Bay and between Robbins Reef and Steer's stake boat, the wind seemed to be increasing, and, for

this reason, the captain decided to bring the tow about, and seek haven at Stapleton.

The tow was thus constituted: The Bern had about forty fathoms of hawser to the head tier, and about five to eight feet separated the respective tiers; the Ashbourne was on the starboard side at the second tier after the tow left the Kills, but, being a helper tug, changed her position as circumstances dictated.

It was stipulated that it is about a mile from the mouth of the Kills to Robbins Reef, where the increase in the wind was felt.

The captain of the Katie E. was dead at the time of the trial, and the captain of the C. D. H. Webber was called and testified as to what he observed. When the tow left Port Reading, the captain of the Katie E. was pumping, but the pump "sucked," and the statement was made that the barge was not leaking to the said captain's knowledge.

■ There is no evidence that the Katie E. was unseaworthy, or that she was overloaded, and the libel as to the barge and her owners will be dismissed.

■ As the proof was made, the sole question to be determined is whether the tug Bern was guilty of such negligence, in attempting the passage across the bay under the prevailing conditions of wind and water, that liability as to her should be imposed. This means that the departure from Port Reading, and the passage through the Kills, are not criticized, and therefore it was the continuance of the voyage for one mile or so, into the open bay, which must be relied upon to sustain the libel. No criticism is offered of the conduct of the captain of the Bern for coming about into the wind and making for Stapleton, although, for all that the evidence shows, it was the attempt to find shelter, and not the continuance upon the original course, which brought about the disaster.

The measure of the responsibility resting upon the tug is well understood, and nowhere more satisfactorily stated than in The Eastern (C. C. A.) 280 F. 711.

Having in mind then that the decision of the captain of the Bern to proceed through the waters of the bay is not to be considered negligent unless nautical experience and good seamanship would condemn it as unjustifiable at the time and under the circumstances, it becomes necessary to examine the facts, which are not in dispute, with the foregoing test in mind.

In the first place, the neglect of the storm warning is frankly conceded, but is not of itself sufficient to constitute negligence. Bouchard Transp. Co. v. Pennsylvania R. Co. (C. C. A.) 6 F.(2d) 362. Moreover, the safe accomplishment of the taking of the light tow in the morning of the same day from New York to Port Reading apprised the captain of the actual then prevailing conditions, and formed some basis for his judgment concerning the return trip.

■ However, he is chargeable with responsibility for the make-up of his tow, Harrington v. A. S. Sherman (C. C. A. Second Circuit January 5, 1931) 47 F.(2d) 230; that is, with knowledge that the Katie E. had a freeboard amidships of about eight inches only. While the freeboard of the other barges is not shown, the captain of the Bern says that he considered the venture into the bay safe, so long as he had a high port. From this it is assumed that the barges having the weather berth were of greater freeboard than the Katie E.

■ Knowing the condition of the tide, which was obliquely opposed to the wind, it seems fair to hold that the precaution should have been taken of sending the Ashbourne ahead to observe and report upon conditions in the bay, as was suggested by Judge Brown in The Nannie Lamberton (D. C.) 79 F. 121, under almost identical circumstances. Had this been done, it may be doubted if the tow would have left the Kills that night.

The decision for the libelant barges by Judge Brown was affirmed in (C. C. A.) 85 F. 983, and it would seem that to reach a different result in this case would be to disregard decisions which are of compelling authority.

While it is true that the sinking of this barge did not occur in following the original movement of the flotilla, but because that was abandoned in the exercise of sound judgment, it is obvious that, had the departure from the Kills not been initiated, there would have been no necessity for reversing the maneuver, and so exposing the Katie E. to the hazards of the weather berth.

In the belief, therefore, that the conduct of the captain of the Bern, in departing from the Kills without seeking complete information as to the hazards that lay proximately in his course (i. e., a northwest wind of better than thirty miles velocity opposed to a flood tide) when such could have been procured with comparative ease, constituted such negligence as would merit condemnation by nauti-

cal experience and good seamanship, it is held that the libelant may take the usual decree against the tugs Bern and Ashbourne, with costs; the libel is dismissed against the Katie E. and Neville and Malia without costs.

Settle decree on notice.