## THE DOROTHY R. McCOLLUM.

## THE OVERBROOK.

## THE DELMAR.

### A. J. & J. J. McCOLLUM v. PENNSYLVANIA R. CO.

### No. 13174.

District Court, E. D. New York.

May 12, 1933.

Macklin, Brown, Lenahan & Speer, and J. D. Eggleston, all of New York City, for libelant.

Burlingham, Veeder, Fearey, Clark & Hupper, Chauncey I. Clark, and P. F. Shortridge, all of New York City, for respondent.

CAMPBELL, District Judge.

This suit is brought to recover damages alleged to have been caused to the boat and her cargo by the turning over and sinking of the coalboat Dorothy R. McCollum while in tow of the respondent's steamtugs Overbrook and Delmar.

I find the facts as follows:

The libelant, at all the times hereinafter mentioned and at the time of the trial, was a domestic corporation and the owner of the coalboat Dorothy R. McCollum and owner of the cargo of coal laden thereon.

The steamtugs Overbrook and Delmar were, during the currency of process hereunder, within this district and the jurisdiction of this court.

At all the times hereinafter mentioned and at the time of the trial, the Pennsylvania Railroad Company was a corporation organized and existing under and by virtue of the laws of the state of Pennsylvania.

Early on the morning of February 20, 1932, the steamtug Overbrook left South Amboy, N. J., bound for New York, with a tow of four loaded coalboats arranged in two tiers each, on a hawser 300 feet in length.

A Cleary boat was the starboard hawser boat, the Dorothy R. McCollum, the port hawser boat, the Dorita the starboard boat in the second tier, and the Port Carbon was the port boat of the second tier.

The Dorothy R. McCollum had a freeboard of 3 to 4 feet forward, 2½ feet aft, and 18 to 20 inches amidships.

The Port Carbon had a freeboard of about 2 feet amidships.

Both the Dorothy R. McCollum and the Port Carbon were fully loaded, but the Cleary boat and the Dorita were partly loaded, and each had a higher freeboard amidships than the Dorothy R. McCollum and the Port Carbon.

The tow proceeded through the Kills, being joined by the steamtug Delmar, as an assisting tug, off Port Reading.

The wind was out of the northwest, blowing about 25 to 30 miles an hour, and had been blowing out of that quarter for about 12 hours.

The tide was flood, and there was some sea running, but not a very heavy one.

Under these conditions the master of the Overbrook had, as was customary, determined that it was safe and proper to proceed up New York Bay with his tow, when he was in Newark Bay.

About 6 o'clock a. m. the tow proceeded out of the Kills into the upper bay, and about 6:10 o'clock a. m. the captain of the Dorothy R. McCollum, finding that water was coming into the hatch and into the coal, called to the steamtug Delmar for assistance, and said that he was going to sink.

The Delmar at once responded and left the starboard side of the tow and made fast on the port side of the Dorothy R. McCollum.

The Delmar was larger than the Dorothy R. McCollum, and as she made fast the stem of the Delmar extended over 15 feet ahead of the bow of the Dorothy R. McCollum.

The Dorothy R. McCollum was loaded with a small list to port and had two pumps, a hand pump forward on the starboard side, and a gasoline pump aft on the port side.

The hand pump was not fastened to the deck and had the appearance of not having been used for a considerable time, but would have been of no avail as the boat was listed to port. The gasoline pump was out of order, and the captain was unable to start it up, and so informed the captain of the Delmar.

There were supposed to be two siphon boxes on the boat, one on the starboard side and one on the port side.

The master of the Delmar sent his deck hand aboard the Dorothy R. McCollum to ascertain if the siphon could be used, and he found and reported the fact that no water could be found in the siphon box on the starboard side, and that the siphon box on the port side contained a hard substance presumably coal, and that the water could not be reached.

The Delmar was unable to put a siphon on board the Dorothy R. McCollum, and the pumps of the Dorothy R. McCollum could not be used to free her of water.

The Delmar continued on alongside the Dorothy R., protecting her from the seas, and, with the Dorothy R. protected on both sides and astern, the Overbrook continued on until the Dorothy R. turned over and sank off the east end of Governors Island.

The coaming of the hatch of the Dorothy R. McCollum was not water tight, and water and spray were permitted to enter the hold.

A Reading tow came out of the Kills into the bay about an hour after the tow in question, under the same conditions of wind and sea, and proceeded safely up the bay.

No damage was caused to any of the boats in the Overbrook's tow by pounding while in the bay, and the Port Carbon did not suffer from water coming aboard.

The condition of the pumps and coaming of the hatch rendered the Dorothy R. McCollum unseaworthy.

The Dorothy R. McCollum was thereafter raised and repaired.

■ From the facts as found, the steamtugs and the respondent were not at fault.

Libelant's primary contention is that the Overbrook and Delmar were at fault in taking the tow out of the Kills under the weather conditions prevailing at the time, and rely upon The Katie E. (D. C.) 46 F.(2d) 534, 536, as authority supporting their contention.

That case is clearly distinguishable.

The Katie E. had a freeboard of about 7 or 8 inches amidships, whereas the Dorothy R. had a freeboard of 18 to 20 inches amidships, sufficient for a safe passage under the existing weather conditions had she been seaworthy.

In the Katie E. the court found that "there is no evidence that the Katie E. was unseaworthy," and I have found that the Dorothy R. McCollum was unseaworthy.

The time that elapsed after the Dorothy R. left the Kills before her captain called to the Delmar for help was not sufficient to put her in a sinking condition, if she had not had a substantial quantity of water in her hold when she left the Kills.

The holding in the Katie E. that the helper tug should have been sent ahead before the tow left the Kills "to observe and report upon conditions in the bay, as was suggested by Judge Brown in the Nannie Lamberton (D. C.) 79 F. 121," finds no place in the instant suit, as the testimony of the experienced navigators herein shows that the conditions in the upper bay could be determined by the conditions in Newark Bay, there was no turning back, and another tow thereafter safely navigated in the bay after leaving the Kills. Further it appears from the testimony of the captain of the tug Bulley, a disinterested witness of long experience, not employed by the respondent, who came out with the Reading tow about an hour after, that they never bother with wind going across New York Bay unless it is over 35 miles an hour.

The question of neglect of storm warning referred to in the Katie E. finds no place in the instant suit for the reason that no storm warnings were displayed.

Not only is there no evidence in the instant suit of white caps when the tow came out, or jumping or rolling of the boats as in the Katie E., but, on the contrary the evidence is that there was no pounding.

While it may be desirable to have the boats with the highest freeboard to windward, it would be quite an undertaking, under the changing conditions that frequently prevail as to the wind, to always accomplish that result, and I flatly disagree with much of the testimony on that subject given by libelant's expert.

■ Surely the placing of a boat with but 7 or 8 inches freeboard amidships on the windward side would be taking a great risk, but 18 to 20 inches freeboard amidships with

tight coamings of the hatch makes the top of the coaming 3 feet above the water, and I agree with the experienced navigators in the instant suit, called on behalf of respondent and the tugs, that should be sufficient with a seaworthy boat. With one exception there was not a great difference in the freeboards of the boats in the tow in the instant suit.

The tow was under the control of the Overbrook, which was without fault.

The Delmar was an assisting tug and not chargeable with the general navigation of the tow.

The Delmar was in the customary place of assisting tugs on the starboard side of the tow, and responded without any delay when called upon for assistance by the captain of the Dorothy R. McCollum.

The Delmar did all in her power to relieve the Dorothy R. McCollum, by protecting her by remaining on her port side, and in attempting to put a siphon aboard, which she was prevented from doing by the unseaworthy condition of the siphon box. She also took the captain of the Dorothy R. McCollum aboard and provided for his safety.

■ Libelant urged, but certainly did not with force, that the Delmar erred in not taking the Dorothy R. McCollum out of the tow when assistance was requested.

That contention was not and could not be sustained. The Dorothy R. McCollum, while in the tow with the Delmar on her port side, was protected on both sides and astern, but, if she had been taken out, she would have had no protection, but the Delmar on one side, and would have sunk sooner and probably in a worse place.

■ The respondent and tugs were not insurers and were liable only for negligence, which has not been shown.

I find as conclusions of law:

That the libelant has failed to show by a fair preponderance of the evidence that the respondent and the steamtugs Overbrook and Delmar, or either or any one for whose actions they or either of them were responsible, negligently caused or contributed to any damages suffered by the libelant in the sinking of the coalboat Dorothy R. McCollum and her cargo of coal, or any damages to said boat or cargo on the day in question.

That the respondent and the steamtugs Overbrook and Delmar are wholly without fault, and that any damages suffered by the libelant by the sinking of the coalboat Dorothy R. McCollum and her cargo of coal, or any damages to said boat or cargo on the day in question, was caused by the unseaworthy condition of said coalboat Dorothy R. McCollum, and the libelant is solely at fault.

That the respondent and said steamtugs Overbrook and Delmar are entitled to a decree against the libelant, dismissing the libel with costs.

That a decree may be entered accordingly.

Settle decree on notice.

If this opinion is not considered a sufficient compliance with rule 46½ of the Rules in Admiralty (28 USCA § 723), proposed findings of fact and conclusions of law in accordance with this opinion may be submitted for the assistance of the court, as provided by the Rules of this court.