**EASTERN TAR PRODUCTS CORPORATION et al. v. CHESAPEAKE OIL TRANSPORT CO. et al.**

No. 4399.

Circuit Court of Appeals, Fourth Circuit.

Jan. 9, 1939.

George W. P. Whip, of Baltimore, Md. (Braden Vandeventer, of Norfolk, Va., on the brief), for appellants Eastern Tar Products Corporation and Liquids Transp. Corporation.

Emory H. Niles, of Baltimore, Md. (Theodore R. Dankmeyer, of Baltimore,

Md., on the brief), for appellant Tar & Asphalt Transp. Co.

William A. Grimes, of Baltimore, Md. (Ritchie, Janney, Ober & Williams, John W. Farrell, and Robert W. Williams, all of Baltimore, Md., on the brief), for appellees.

Before PARKER and NORTHCOTT, Circuit Judges, and H. H. WATKINS, District Judge.

## NORTHCOTT, Circuit Judge.

This is an appeal from a decree entered in the District Court of the United States for the District of Maryland, at Baltimore, involving a libel filed on October 25, 1937, by Eastern Tar Products Corporation, a Maryland corporation, and intervening libels filed by appellant, Liquids Transportation Corporation, a Delaware corporation, on December 10, 1937, and the appellant Tar & Asphalt Transportation Company, a Maryland corporation, filed on December 14, 1937. The libels were filed against the appellees, Chesapeake Oil Transport Company, George E. Rogers, Calvert Bank as Trustee, and Blanche T. Rogers and the steamtug Frances. Answers were filed by the appellees on January 25, 1938, to the libel and intervening libels.

The controversies arose out of a marine catastrophe which occurred on February 21, 1937, in Chesapeake Bay, while the tug Frances, owned or operated by the appellees, was towing the barge U. S. No. 232, owned by Tar & Asphalt Transportation Company, and the barge Louisiana Girl, owned by the Liquids Transportation Corporation, from Washington to Norfolk. The barges were loaded with tar.

The Frances was a steamtug of 200 horse power, about 80 feet long, 17 feet beam, and 8 feet 4 inches deep. The barge 232 was 144 feet long and the barge Louisiana Girl was 100 feet long. The barge 232 was next to the tug, connected by a single hawser, and the Louisiana Girl was behind barge 232, connected to it by double lines. In the course of the voyage a storm was encountered on the afternoon of February 21, and shortly after four o'clock the starboard hawser between barge 232 and the Louisiana Girl parted causing the rear barge to slew around, dragging the 232 broadside to the wind and waves. The windows and door of the cabin house of 232 were smashed, letting water into her after compartment. Shortly thereafter the remaining hawser between the barges parted and then the hawser between the tug and 232 also

parted and barge 232 was anchored. The Louisiana Girl had no anchor and drifted into shoal water where it was impossible to get a line from her to the tug. In the meantime the 232 was sinking. The captain of the tug after taking on board the captains of the two barges, they had no other crew, abandoned the barges and proceeded to Norfolk. The barge 232 sank and with the cargo was a total loss. The Louisiana Girl, though adrift, was picked up and towed to Norfolk. The barge and cargo were undamaged.

The libel was brought by the Eastern Tar Products Corporation to recover the value of the tar on barge 232, the intervening libel filed by Tar & Asphalt Transportation Company was to recover the value of the barge 232 and the intervening libel filed by Liquids Transportation Corporation was to recover expenses paid for salvaging the barge Louisiana Girl and her cargo.

In the libels there were allegations that the tug was at fault because of insufficient power, improper towing lines, and faulty seamanship on the part of her captain. It was also alleged that barge 232 was unseaworthy.

In May, 1938, a hearing was had at which witnesses were heard on behalf of the libelants and the respondents. The judge below filed an opinion on July 7, 1938, in which he made findings of fact and reached the conclusion, as a matter of law, that the tug Frances was not liable for any damages growing out of the catastrophe. On August 16, 1938, a final decree was entered dismissing all the libels. From this action of the court below this appeal was brought.

The questions involved are first; whether the tug Frances was seaworthy, and second; whether there was any negligence in the navigation of the tug.

The judge below found that the tug and equipment were seaworthy; that there was no negligence in her navigation and that the cause of the damages was a sudden and severe storm which was accompanied by high winds and heavy seas; that the storm could not have been reasonably anticipated but was a peril of the sea and that the tug was not responsible for the damages.

We are of the opinion that all the findings of the trial judge are supported by the weight of the evidence and are correct.

The holding of the judge that the storm was so severe as to constitute a peril

of the sea, for the consequences of which the tug could not be held liable, is strongly supported by the fact that when the Coast Guard station was appealed to for help for the barges, on the arrival of the tug at Newport News, aid was refused because of the severity of the storm. The storm was proven to have been of unusual severity, the approach of which was not indicated by barometer readings. The velocity of the wind that accompanied the sudden squalls was more than forty miles an hour and the wind came in sudden gusts.

The liabilities of a tug with respect to its tow were discussed by this court in Southgate v. Eastern Transportation Co., 4 Cir., 21 F.2d 47, where Judge Waddill said [page 49]:

"A vessel, seeking the services of a towboat, holds itself out to be sufficiently staunch and strong—that is, seaworthy—to withstand ordinary perils of the sea to be anticipated on a voyage; and a tug has also the right to assume that the tow will carry a competent and sufficient crew, and is not liable for dangers, either from the unseaworthy condition of the barge or for the failure of its owners to properly man and equip the same. [Citing cases.]

"The duty of a tug to its tow is likewise well understood. The tug is not an insurer of the safety of the tow, nor is there imposed upon it the obligation of a common carrier; but it is charged with the duty of exercising reasonable and ordinary care for the protection and safe-keeping of the tow intrusted to it, and should faithfully and diligently discharge its undertaking, omitting nothing that could reasonably be required of it that would tend to lessen hazards and dangers to the tow.

"The happening of an accident to a tow does not of itself raise any presumption of negligence on the part of the tug; and the burden of proof is upon the party seeking to charge the tug with liability therefor. The towage contract requires no more than that one who undertakes the service shall carry out his undertaking with the degree of caution and skill which prudent navigators usually employ in similar services." (Citing cases.)

■ It is contended that the tug was not equipped with engines of sufficient horse power for the tow and for that reason was unseaworthy. The trial judge found against this contention and held that the tug had repeatedly taken a similar tow in inland waters and it was proven that tugs of no greater power were used for tows of the kind involved here. It was shown that the secretary of libelants Eastern Tar Products Corporation and Liquids Transportation Corporation knew the tug Frances would be used and was familiar with her and that the head of libelant Tar & Asphalt Transportation Company had chartered the tug with full knowledge of her power.

It was also shown that numerous tugs of less or only slightly more horse power than the Frances were used in towing barges as large or larger than the 232 and the Louisiana Girl in voyages in inland waters.

As was said by this court in Bronx Barge Corporation v. Connelly Transportation Corporation, 4 Cir., 35 F.2d 294, 297: "* * * We find nothing in the evidence upon which to predicate a finding of inadequacy on the part of the tug. It is not enough that a larger or more powerful tug might have accomplished more."

In The Allie & Evie, D. C., 24 F. 745, Judge Brown stated [page 749]: "* * *. The defense of unseaworthiness is not made out by showing that 'a stouter ship might have survived the peril.' Amies v. Stevens, 1 Strange 128. The law does not require a vessel, to be seaworthy, to be capable of withstanding every peril; nor that a tug be capable of rescuing her tow in all weather; nor that she shall start only when there is no possibility of danger; nor that the master in an emergency shall infallibly do that which, after the event, others may think would have been best. [Lawrence v. Minturn] The Hornet, 17 How. 100 [15 L.Ed. 58]; The Star of Hope, 9 Wall. [203], 230 [19 L.Ed. 638]; The W. E. Gladwish [Fed. Cas.No.17,355], 17 Blatchf. 77, 83; The Mohawk [Fed.Cas.No.9,693], 7 Ben. 139. The tug must be reasonably adequate for the work undertaken; managed with reasonable judgment and nautical skill; and she must start only in weather that in the judgment of nautical men is reasonably safe for the trip. In whatever form the question comes up, whether as to seaworthiness, adequacy for the work, or the time of starting, it is a practical question of reasonable prudence and judgment. And as regards seaworthiness in general, or the adequacy of the tug for the work undertaken, there is no other final criterion than the judgment of practical men versed in the business and the customs and usages of the time and place, viewed as representing the judgment and knowledge of the time."

In Standard Oil Company v. Shipowners' & Merchants' Tugboat Company, 9 Cir., 17 F.2d 366, it was held [page 368]: "The fact itself that the towage contract here was entered into was, in view of the knowledge and experience of both the parties thereto, evidence that in the judgment of practical men, versed in the business, the tug was regarded as possessed of sufficient power for the service contemplated."

See, also, Standard Transportation Company v. Great Lakes Towing Company, D. C., 260 F. 327, affirmed 2 Cir., 270 F. 215.

 It was contended that the captain of the tug was negligent in not seeking a harbor in the face of the storm. The evidence showed that while it was yet possible to seek a harbor the storm was not of such severity as to justify a discontinuance of the voyage and that the gale, described as a line squall, that caused the damage came up suddenly. On this point, in the case of Frank Jacobus Transportation Company v. Moran Towing & Transportation Company, Inc., 2 Cir., 67 F.2d 603, the court said [page 605]: "Judging as we now can, it would probably have been better to take the chances of the turn into Huntington or Cold Spring, though even that is not certain. But we cannot judge a master because it seems to us, who were not there, that another choice would have been better. Only in case his conduct is outside the range of possible discretion, may we hold him for lack of seamanship; error to become fault must be gross and flagrant. The Eastern [2 Cir.], 280 F. 711. The Edgar H. Vance [9 Cir.], 284 F. 56, 59. The Lizzie D. Shaw [3 Cir.], 47 F.2d 820. It seems to us that, if error there was, it was one which lay within the discretion of capable seamen."

In Shaw v. Dempsey Sons Barge Company, 3 Cir., 47 F.2d 820, the court said [page 823]: "The happening of the accident does not raise any presumption of negligence on the part of the tug. She is not an insurer of the safety of the tow. Southgate v. Eastern Transp. Co. [4 Cir.], 21 F. 2d 47, 49. The Margaret, 94 U.S. 494, 497, 24 L.Ed. 146. Moreover, the tug should be exonorated if her master acted, not with the highest degree of skill and care, for that was not required of him, The Margaret, 94 U.S. 494, 24 L.Ed. 146, but with reasonable skill and care and in the exercise of the reasonable discretion of experienced navigators. The Nannie Lamberton [2 Cir.], 85 F. 983. The Eastern [2 Cir.], 280 F. 711, 713."

 The judge below found the towing hawsers, which the libelants contended were inadequate, to be of sufficient length and strength to serve, under ordinary circumstances, the purpose for which they were used. This finding is also supported by substantial evidence. The evidence was that the hawser that first parted had been particularly examined and was purchased by the secretary of the libelants to be used on the voyage.

The burden of proving the liability of the tug for the damages claimed was upon the libelants. This burden they have not carried.

It is well settled that the findings of a trial judge who heard the witnesses, and had an opportunity to observe their demeanor on the witness stand, are entitled to great weight and will not be changed by an appellate court unless clearly wrong. Chesapeake Lighterage & Towage Co. v. Baltimore Copper Smelting & Rolling Co., 4 Cir., 40 F.2d 394, and cases there cited.

Giving to the findings of the trial judge that weight to which they are entitled it follows that the decree must be affirmed.

Affirmed.