## THE SHUBERT *v.* THE EINAR AND THE IVANHOE.

## THE EINAR *v.* THE IVANHOE.[1]

*(District Court, E. D. Pennsylvania. February 6, 1891.)*

1. COLLISION—TUGS AND TOWS.
    The tug Ivanhoe and tow Einar, passing down the Delaware, met head on the tug Brown and tow Shubert passing up, both tows being astern, on a windless night, a slight fog near the water and tide flood. When the Ivanhoe sighted the Brown she continued her course in silence for a few minutes, then turned eastward in silence. The Brown then went a-port, and blew one blast, which, being immediately followed by a blast from the tug Argus, slightly below, coming up, was mistaken by the Ivanhoe for a two-blast from the Argus. The Brown was then discovered in front of her bows. The Ivanhoe and Brown then ported, and the tows collided. *Held,* as the Ivanhoe had not signaled the Brown before turning eastward, had mistaken the whistles of the Brown and Argus, although the two had a different sound, and the vessels were some distance apart, she had not kept a vigilant lookout, and was in fault.

2. SAME—NEGLIGENCE OF TUG.
    A tow having a pilot on board was brought by the negligence of her tug into collision. *Held,* as a pilot's duty was to control the tug as well as the tow, and as the failure of the tug to take proper precautions must have been observable from the tow, the tow is equally liable with the tug. Following *The Civilta,* 103 U. S. 699; *The Hart* v. *The Ivanhoe,* 38 Fed. Rep. 765.

3. ADMIRALTY—ACTIONS ON DIFFERENT RIGHTS.
    A vessel brought an action against a vessel with which she had collided, and the tug towing it, in one district, and against her own tug in another. *Held* a decree holding the other vessel and her tow each equally liable should provide that the amount recovered from her own tug be deducted from the amount awarded, and that it should be drawn to secure a recovery from each of the amount the other should fail to pay, and that it would take precedence of a decree in favor of the other vessel against her tug.

In Admiralty.

Libel by William H. Sloan, master of the schooner William H. Shubert, against the Einar and the tug Ivanhoe; and libel by Lauritz Olansen, master of the bark Einar, against the schooner William H. Shubert and the tug Ivanhoe.

*Henry R. Edmunds,* for the Shubert.
*John Q. Lane,* for the Einar.
*Coulston & Driver,* for the Ivanhoe.

BUTLER, J. On the night of March 21, 1890, as the schooner Shubert was passing up the Delaware river, off Reedy island, towed astern

---

[1] Reported by Mark Wilks Collet, Esq., of the Philadelphia bar.

of the tug Brown, she encountered the bark Einar passing down, towed astern of the tug Ivanhoe. The schooner and bark came into collision, and each was seriously damaged. The former libeled the latter and the tug at this port, and the Brown in Delaware. The bark libeled the schooner here, and the Brown in Delaware.

At the time of the accident the atmosphere was thick near the water, and the circumstances were such as to require an especially vigilant lookout. There was virtually no wind, and each tow was depending entirely on her tug for motive power. The tide was flood; notwithstanding the conflict of testimony respecting this, the conclusion stated seems fully warranted. The vessels were about the center of the channel, and approaching so nearly "head on" as to render a change of course necessary to avoid danger. Here again the testimony is not harmonious, but its decided weight supports the conclusion stated. That the tugs so understood the situation at the time, is clearly indicated by the Ivanhoe's change eastward, and the Brown's signal and change also.

It is unnecessary to consider the charge against the Brown; she is not here.

Was the Ivanhoe in fault? She is charged with remissness in not maintaining a vigilant lookout; in not signaling the Brown when the latter first came into view, or at least before turning eastward; and in failing to observe and respond to the Brown's first signal. In my judgment, the testimony sustains the charge. Granting the truth of her allegation against the Brown, it does not tend to excuse her conduct. She saw the Brown before the latter saw her,—in ample time to guard against collision. In view of the situation,—the position of the vessels and the condition of the atmosphere,—it was clearly her duty to announce her presence by a proper signal. Instead of doing this she continued her course for several minutes in silence, and then turned eastward, still without warning. The situation called for extraordinary vigilance, and she failed to observe such as is ordinary to vessels meeting in the night-time. She was negligent, also, in failing to observe the Brown's first signal. The distance between the Brown and the Argus was such, and the difference in the tone of their whistles such, that proper attention would have avoided the mistaken supposition (which she urges in excuse) that this signal, as well as the next, came from the latter vessel, and they were a "two-blast" from her whistle. The master explains the cause of the misapprehension when he says he "was not looking for a signal from the Brown, in consequence of her position. This, however, is not a valid excuse. The situation was such as to require each vessel to observe the other closely. The only other man on deck was even less vigilant; it is doubtful whether he noted any of the signals, or even understood the situation. Indeed, it may well be doubted whether he possessed sufficient intelligence to qualify him for his duty. If the lookout had been properly vigilant, and the Brown's first signal observed and obeyed, as it should have been, the accident would have been avoided. The master of the tug testifies that if he had gone westward at this time the collision would

not have occurred.. I need not dwell on this branch of the case. Sufficient has been said to indicate my reasons for finding the Ivanhoe in fault.

I am not sure, however, that she is not also blamable for turning westward on receiving the Brown's second signal instead of reversing. Had she reversed, and the Einar's anchor been dropped at this time, it seems quite probable that the accident might still have been avoided. The tide favored this maneuver. It may be said the vessels were then in peril, and a mistake at that time was therefore excusable. The vessels were in pretty close proximity, but I doubt whether there was such peril as would excuse the mistake which I incline to believe was made.

Was the Einar in fault also? She had a pilot on board, who was in control of her movements and also those of the tug. While it was the tug's duty, under the circumstances, to exercise proper care to avoid collision, and to govern her own movements as to render it impossible, if she could, it was nevertheless the pilot's duty to see that she did this, by interfering and directing when she was remiss. The Brown's and Shubert's lights were seen from the Einar as early, if not earlier, than from the Ivanhoe, and yet although the pilot saw, or should have seen, that the latter was failing in all necessary precautions to avoid collision, he did nothing whatever to control her movements. His testimony shows why he did not. He left everything to her master, in seeming ignorance of the fact that it was his duty to direct the navigation of the tug as well as of the tow. Under these circumstances, and in view of decision in *The Civilta*, 103 U. S. 699, the Einar, also, must be held responsible for the collision. That case and this are similar in their facts; there, as here, the pilot was on board the tow and in command of both vessels; in principle they are identical. There the tow was held liable to damages because the pilot, who was in general charge and aboard of her, failed to discharge his duty. There, as here, he failed to assume command, leaving it to the master of the tug. The court says:

"Both vessels are responsible for the navigation, as has already been stated; the ship Civilta because her pilot was in general charge, and the tug because of the duty which rested on her to act on her own responsibility in the situation in which she was placed. The tug was in fault because she did not of her own motion change her course; * * * and the ship because her pilot, who had charge of both ship and tug, neglected to give necessary directions to the tug when he saw, or should have seen, that no precautions were taken to avoid the approaching danger."

This view was adopted and followed in *The Hart* v. *The Ivanhoe*, 38 Fed. Rep. 765.

It may possibly be difficult to understand the justice of holding a vessel responsible for the neglect of a pilot whom the law pronounces competent, and virtually compels her to employ and trust with her navigation. It is too late, however, to raise this question.

The Einar is charged with fault, also, in failing to follow her tug. I am not satisfied this charge is well founded. She appears to have endeavored to follow, and it seems probable she did as well as she could

under the circumstances.    The sudden changes of the tug were embarrassing.

The charge against the Shubert is not sustained.    The only contributory negligence alleged is that she did not follow her tug, and this is I think fully disproved.

The Ivanhoe and the Einar must therefore bear the Shubert's loss in equal proportions,—first deducting from the loss such sum as the Brown may be adjudged responsible for and compelled to contribute if the Shubert's libel in Delaware is sustained.

The Einar's libel against the Shubert must be dismissed, for the reasons already stated.    Her libel against the Ivanhoe is sustained to the extent of one-half her damages, arising from the joint fault of the Ivanhoe and herself.    Satisfaction of the decree in her favor must, however, be postponed until the decree against her and the Ivanhoe in favor of the Shubert is satisfied.

The decree in favor of the Shubert will be drawn in conformity with the rule established in *The Alabama*, 92 U. S. 695, so as to secure a recovery from the other respondent of such part of one's proportion of the damages as he may fail to pay.