## In re McWILLIAMS et al.

(Circuit Court of Appeals, Second Circuit. May 27, 1896.)

LIABILITY OF TUG—LOSS OF TOWS.

A tug whose tow of 14 coal-laden barges was broken up, and part of the barges sunk, while proceeding up Long Island Sound for New Haven and intermediate ports, by reason of encountering a rough sea created by an ebb tide and a strong easterly wind, *held* liable for the loss, for undertaking the trip at a time when the wind at New York had for 24 hours been strong from the northeast and north, and when a change to the eastward was, as shown by the evidence, to be expected at any time. 65 Fed. 251, affirmed.

Appeal from the District Court of the United States for the Southern District of New York.

This was a petition by Charles McWilliams and others, owners of the steam tugs Vandercook and Thomas Purcell, for limitation of liability in respect to such tugs, for the loss of certain coal-laden barges while in tow thereof. The district court found that the tugs were in fault, and granted the petition for limitation of liability. 65 Fed. 251. From this decree the petitioners appeal.

Carpenter & Park, for appellants.

Henry Galbraith Ward, advocate (Robinson, Biddle & Ward, proctors), for appellees.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

PER CURIAM. The tug Vandercook, having in tow 14 coal-laden boats and barges, assisted by the tug Purcell, left Hammond's Flat at 6 p. m., November 9, 1893, bound up Long Island Sound for New Haven and intermediate ports. Shortly after midnight an ebb tide and strong easterly wind were encountered, creating a rough sea, by which the tow was broken up, resulting in the loss by sinking of seven of the boats. The question in the case is whether the weather conditions were such at the commencement of the voyage as to justify an experienced navigator, exercising ordinary prudence, and familiar with the ordinary conditions of the proposed voyage, to undertake the trip, in view of the qualities of the tugs, and the character of the tow. The preponderance of testimony supports the conclusions reached by the district judge. The witnesses were examined in his presence, and, so far as the merits depend upon their credibility and intelligence, we ought not to disturb his conclusions. The disaster was not caused by a storm, or any extraordinary perils, but was the result of meeting a strong head wind upon an ebb tide. This should have been anticipated, if the record of the weather bureau of New York, showing the weather conditions during the 24 hours preceding the commence-

ment of the voyage, is to be accepted as correct. Throughout November 8th, while the tug had been awaiting favorable weather, the wind was strong from the north or northeast. At midnight it veered from the northeast to north, and remained between north and northwest during November 9th, until the vessels put to sea. Under those circumstances, as appears very conclusively by the testimony, a change of the wind to eastward was to be expected at any time. The change did not occur as soon as was to be expected, but it did occur when the tow was at a place where a harbor could not be made before the pounding seas were fatal. The judgment of the district court is affirmed, with costs.