## THE VICTORIA.

## THE POCAHONTAS.

## THE KOMUK.

### MINCH v. THE VICTORIA et al.

(District Court, S. D. New York. February 15, 1897.)

TUG AND TOW—DUTY OF EXAMINATION BEFORE ENTERING ROUGH SEA AND WEATHER.

The tug V., with two other tugs coming down the North river with a fleet of canal boats, ran into a violent southeast storm and rough water in Haverstraw Bay, in which the tow was afterwards broken up. There was abundant previous warning of storm, both from the ordinary indications and from cautionary signals displayed, and the tug entered Haverstraw Bay without previous examination of the condition of the bay. *Held*, that the tug was liable for lack of reasonable prudence with such a tow, and was responsible for the damage.

Carpenter & Park, for libelant.
Stewart & Macklin, for respondents.

BROWN, District Judge. The above libels were filed to recover for the injuries to and loss of certain canal boats and their cargoes, in Tappan Zee, in a storm, while coming down the Hudson river in tow of the above-named tugs on the morning of the 29th of August, 1893.

The libelant's boats were part of a fleet of 32 boats, i. e., 8 tiers of 4 boats each, which came from Albany in tow of Ronan's Line, on a hawser. On reaching West Point, in the evening of August 28th, the 3 tugs above named, which had come up from New York that afternoon and evening, took the tow, relieving the tugs that had brought it down from Albany. On the 28th, cautionary signals were given in New York, indicating the approach of a violent southeast storm. In crossing Newburg Bay considerable rough weather was met, with indications of storm. The tow, however, proceeded on from West Point, being more or less in the shelter of the Highlands until they reached Stony Point, at about 1 a. m.

At that time the wind was blowing strong from the southeast. Two hours before, it was blowing 21 miles an hour at New York, and at 1 o'clock it was blowing 31. The tugs, however, continued on past Stony Point without pause, or examination below to see if the weather was fit to proceed, and speedily ran into a heavy wind and sea, on a course nearly southeast, across Haverstraw Bay into Tappan Zee, until by the swamping and sinking of the canal boat Anthony, in the hawser tier, the tow was broken up. The subsequent damage was, I think, the incidental result of that breaking up of the tow, and of the endeavors of the tugs to take care of the boats.

A great deal of testimony has been taken, conflicting as usual, as regards the condition of the weather before and after passing Stony Point. I am satisfied that the tugs had abundant reason, through the cautionary signals that had been displayed, and from the signs of storm from the time the tow arrived at West Point, to require them to examine the state of the weather below Stony Point, before entering Haverstraw Bay. Above Stony Point there was abundant means of anchorage until the storm had subsided.

It is true the storm was one of unusual violence for the summer season; but this had been predicted. The testimony of the captains of the tugs indicates that they were not accustomed to pay attention to cautionary signals. If this is the practice, it must certainly be at their risk. In approaching exposed situations with boats of this character, not able to withstand heavy seas, it has often been shown before me that tugs are accustomed to go out ahead and make examination before taking tows out into an exposed situation (see The Bordentown, 40 Fed. 682); and this is required by reasonable prudence (The Nannie Lamberton [Dec. 11, 1896] 79 Fed. 121).

I must, therefore, hold the tugs liable on the ground that they did not use the reasonable caution required of them, nor heed the express evidences of a storm before reaching Stony Point, nor regard the previous public notice of a coming violent southeast storm, with which they must stand chargeable. In re McWilliams (The Vandercook) 65 Fed. 251, affirmed 20 C. C. A. 580, 74 Fed. 648.

The libelant is entitled to a decree, with costs.