### THE WILLIAM E. GLADWISH.

(Circuit Court of Appeals, Second Circuit.   April 18, 1912.)

#### No. 188.

**1. Towage (§ 15*)—Loss of Tow—Liability of Tug.**

A tug *held*, on the evidence, not chargeable with any fault which .rendered her liable for the loss of a tow by going adrift when passing through the eastern entrance to Long Island Sound and striking on the rocks, either in leaving a port where the tow had laid up for two days on account of foggy weather or because of negligent navigation; it appearing that two other tows laid up in the same port and bound in the same direction left at about the same time, and that the proximate cause of the breaking away of the tow was a sudden squall which caused one of the four tows to touch on a rock and part the hawser.

[Ed. Note.—For other cases, see Towage, Cent. Dig. §§ 30–38; Dec. Dig. § 15.*]

**2. Towage (§ 11*)—Liability of Tug for Loss of Tow—Mistakes of Judgment.**

A towing tug is not an insurer, and her owners are not responsible for the master's errors of judgment.

[Ed. Note.—For other cases, see Towage, Cent. Dig. §§ 11–23; Dec. Dig. § 11.*]

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty by Elmer A. Keeler, owner of the steam tug William E. Gladwish, for limitation of liability. From a decree holding the tug liable for loss of the coal barge P. R. R. No. 701, in tow, petitioner appeals. Reversed.

J. J. Macklin (De Lagnel Berier, of counsel), for appellant.

Burlingham, Montgomery & Beecher (Charles C. Burlingham and Roderick Terry, Jr., of counsel), for appellee.

Carver, Wardner & Goodwin (H. L. Cheyney, of counsel), for Logan Coal Co..

Before LACOMBE, WARD, and NOYES, Circuit Judges.

WARD, Circuit Judge. [1] September 1, 1907, the steam tugs Elmer A. Keeler and William E. Gladwish started from Whitestone, Long Island, with a hawser tow of 12 coal-laden boats in three tiers. September 2d the tow arrived at New London, which was the destination of four of the boats, about 3 p. m. and remained there on account of rainy and foggy weather until September 4 at 7:45 a. m., when each tug left with a tow of four boats tandem, bound for Providence. The only other east-bound tow, the tug Vigilant, left a little later.

When the Gladwish with her tow in the following order, White Ball, H. H. Logue, P. R. R. No. 701, and Laura, had passed Stonington, she lengthened out the hawsers. This is usual before entering the open sea between the Sound and Narragansett Bay. The ebb tide at the time was setting to the southeast, and the Gladwish held a course about east for Watch Hill Point light, so as to get the benefit of the cove between Napatree Point and Watch Hill Point, and prevent the tow

*For other cases see same topic & § number in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

from being carried too far to the southeast by the ebb tide. When the tug had turned to the south of east and was going through the passage, a squall blew up from the south which carried the tow to the northward across the tide and the second boat, the Logue, touched on Gangway Rock, parting the towing hawser. The tug turned around and got hold of the leading boats, White Ball and Logue, but in the meantime P. R. R. No. 701 drifted upon the rocks and subsequently became with her cargo a total loss.

The owner of the Gladwish filed this petition for limitation of liability, alleging that the loss happened without his privity or knowledge and denying negligence. The owners of No. 701 and of her cargo filed answers, denying that the petitioner was without knowledge or privity, and alleging that the loss of No. 701 and cargo was due to the fact that the Gladwish was not powerful enough to handle her tow; that the towing hawser was old and insufficient; that the master was negligent in leaving New London in the weather then prevailing; that he should have subsequently turned into Stonington for safety; that he should not have attempted to pass out into the open sea; and that in doing so he should have kept nearer to the south side of the channel.

The cause was tried before the late Judge Adams, but not decided by him, so that the judge of the court below did not hear or see the witnesses.

There is no proof worthy of consideration upon any of the charges of negligence except those of leaving New London on the morning of September 4th and of attempting to pass out of the Sound in the weather then prevailing. The judge of the court below held that the master of the Gladwish was negligent in these particulars and that there was no sudden squall from the south, but that the loss occurred without the petitioner's privity or knowledge.

The fact of the sudden squall is testified to by a large majority of the witnesses from the tow. We think that they are corroborated by the fact that at the very time the Gladwish got into trouble the Vigilant, which was following her, turned into Stonington as a harbor of refuge and the Keeler, which had passed out of the Sound ahead, turned back to Stonington. In addition to this conduct of all the tows in the same neighborhood at the same time, we have the facts that the wind records kept at New Haven, about 50 miles west and at Block Island about 18 miles east, show no wind velocities in the least degree dangerous.

[2] A tug is not an insurer, and her owners are not responsible for the master's errors of judgment. We see nothing in the record to indicate that it was negligent to leave New London on the morning of September 4th, and, if there were any such indication, the fact that all the eastbound tows left would make us conclude that so doing was at best an error of judgment, and not a fault. So the contemporaneous conduct of the three tows at the time of the accident convinces us that there was a sudden increase of wind from the south.

The proximate cause of the accident was the Logue touching on Gangway Rock, which resulted in the parting of the towing hawser.

But for this there is little doubt that the Gladwish would have gone through Watch Hill passage and turned around in safety, just as the Keeler did. The decree is reversed with costs.