## THE ELI B. CONINE.,

### (Circuit Court of Appeals, Second Circuit. April 11, 1916.)

### No. 227.

TOWAGE ☞11(5)—LOSS OF TOW—LIABILITY OF TUG.

A tug, which with three helpers undertook to take a tow of 19 loaded coal barges from North River around in East River during a south wind which at times exceeded 60 miles an hour, *held* negligent, and liable for the loss of a barge, which was swamped while rounding the Battery. The barge *held* not in fault for not having her hatch covers in place, which was not customary nor usually required while navigating harbor waters.

[Ed. Note.—For other cases, see Towage, Cent. Dig. § 17; Dec. Dig. ☞11(5).]

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty by Ferdinand Gildersleeve and Olive Gildersleeve & Sons, Incorporated, owners of the barge Lillian, against the steam tug Eli B. Conine; the Cornell Steamboat Company, claimant. Decree for libelants, and claimant appeals. Affirmed.

January 3, 1913, was contemporaneously noted by the district forecaster in New York City as "one of the notable windy days of record." The hourly movement rose from 31 miles between 6 and 7 a. m. to 62 miles between 12 noon and 1 p. m., with a maximum of 66 miles. Between 2 and 3 p. m. the movement was 75 miles, with one 5-minute squall at the rate of 86 miles. At approximately 10 a. m. the tug Conine left Edgewater, N. J., with a tow of coalboats bound for the East River. The fleet was added to from time to time by helper tugs, and the helpers then assisted in towing. By noon, the tow consisted of 19 boats in 5 tiers, hauled by 4 tugs, and was off Cortlandt street, Manhattan. The tide during this passage had been ebb and the wind southward—probably shifting at times both to the eastward and westward of south. It required an hour to pull the tow from near Cortlandt street to the vicinity of Pier 1, North River.

Libelant's boat Lillian was the starboard hawser boat of this tow; she was an open coal barge, with a full, but not unusual, cargo aboard; she had hatch covers, but they were not in use; the strongbacks, by which alone the covers could have been made secure, were below decks, underneath the coal, and could not be gotten at. While the tow had been proceeding in a general southerly direction and head to the wind, no damage was received by any boat. At or near Pier 1 the tide changed, and the tugs turned eastward to round the Battery on the flood. As soon as the heading of the tow changed, the starboard side thereof was exposed to the full sweep of the waves, and when not far from the Aquarium, or Castle Garden, the Lillian swamped. At or about the same time the smallest tug of the four towing vessels was obliged to cut her lines and seek shelter in a slip, because her freeboard was not sufficient for the weather; but she was further distressed by the wash from the other tugs. The owner of the Lillian brought this libel to recover for the losses thus received.

J. Parker Kirlin, of New York City (H. H. Flemming, of Kingston, N. Y., and Wm. H. McGrann and Robert S. Erskine, both of New York City, of counsel), for appellant.

Park & Mattison, of New York City (Samuel Park, of New York City, of counsel), for appellees.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Before WARD and ROGERS, Circuit Judges, and HOUGH, District Judge.

HOUGH, District Judge (after stating the facts as above). Caution in tempestuous weather is of course obligatory, even in narrow and sheltered waters; and danger arises for harbor craft, when stronger or better built vessels would run no risk. Care is largely measured by what is to be taken care of. The navigators of these towing tugs knew, or were bound to know, that they had in charge, not one, but several, boats of little freeboard, filled with coal, and easily swamped, if exposed to the full force of waves, moderate when measured by what is to be expected in open waters.

It was known, also, that a long-continued southerly wind must rouse a considerable sea at the Battery, because there is open water from there to the Narrows, and it was obvious that in turning eastward out of the North River the starboard side of the tow would be exposed to the full sweep of a sea that a most unusual wind had been arousing for hours. These dangers were not thought sufficient to prevent or delay the trip, but that proceeding ahead was an error of judgment the event both as to boat and tug soon showed.

"Lack of care under the circumstances," which is negligence, is rarely willful or reckless; it is usually error of judgment. But the converse is not true—that every error of judgment is negligence. The error must be measured by the standards of conduct and business knowledge furnished by the evidence and by experience of which even courts can take cognizance without direct testimony. If the error, viewed from that standpoint, is such as would not have been committed by a reasonable man, reasonably skilled in his occupation, it is negligence. When thus tested, the presumably deliberate act of the Conine's navigators must be pronounced negligent, because it exposed the Lillian (and other boats) to dangers they were ill-fitted to endure, and of which no harbor captain could be ignorant. Indeed, the evidence leaves us in no doubt that the perils encountered were known to all, and justly feared by some, of the licensed men in charge of the towing craft.

Defense rests principally upon the argument that it was not negligent to start upon the voyage (which is admitted), that no occasion for alarm arose until Pier 1 was reached, and that it was then impossible to do anything but go ahead, risk the dangers of rounding the Battery, and seek shelter in the narrow waters of the East River. To this we cannot agree. How hard it was to drag the tow against the wind and waves is shown by the time required to get from Cortlandt street to Pier 1. The tide aided little against such a storm. It was not only possible, but quite feasible, to stay in the North River, and this should have been done. All that was required was cessation of effort to get ahead, and the tow would have remained substantially as it had been for hours. The only obligation to proceed resulted, not from the weather, but from an imperative desire to deliver the coal at its East River destination, which is no excuse for errors of navigation.

It is urged as a contributing cause of disaster, and a fault on the part of the Lillian, that she had no covering hatches in place. Her condition was well known to the tug masters, and it is rarely necessary to put on hatches while working in the upper harbor of New York. Boats of the class in question usually omit them on harbor trips. The Lillian was entitled to expect exposure to no unnecessary danger; she was subjected to such danger, and that constitutes the primary fault in this case. As it was no fault on the Lillian's part to start without covers in place, and it was a fault in the tugs to take her around the Battery in such a storm, we cannot consider it negligent to omit a possible precaution against a danger not reasonably to be anticipated, and produced by the error of claimant's employés. We say possible precaution, because it is doubted whether the covers under circumstances shown would have changed the event.

The decree is affirmed, with interest and costs.