### THE CLARENCE L. BLAKESLEE.

(Circuit Court of Appeals, Second Circuit. May 8, 1917.)

#### No. 246.

1. TOWAGE ☞11(1)—LIABILITY OF TUG FOR INJURY TO TOW—GENERAL RULES GOVERNING.

A towing tug is not an insurer, and negligence is not presumed because of an injury to her tow not otherwise accounted for, but must be affirmatively proved; nor is the tug liable for the master's error of judgment, unless he makes a decision which nautical experience and good seamanship would condemn as unjustifiable at the time and under the circumstances shown.

2. TOWAGE ☞15(2)—LIABILITY FOR INJURY TO TOW—PROOF OF NEGLIGENCE.

Allegations of negligence against a tug, causing one of the barges in her tow to fill and list, so that it became necessary to cast her adrift, *held* not sustained by the evidence, which rather tended to show that her leak was caused by collision with another barge, for which the tug was not in fault.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty by the Conklin & Foss Company, as owner of the barge Ruth, against the steam tug Clarence L. Blakeslee; the New Haven Trap Rock Company, claimant. Decree for libelant, and claimant appeals. Reversed.

The libel alleged that the boat Ruth had received injuries (listing and losing her deck cargo) by going adrift while in tow of claimant's tug Blakeslee. The Blakeslee, with a tandem tow of four boats, was on the morning of November 15, 1915, in Bridgeport harbor bound for New York City. The Ruth was the hawser boat, and had under her stern the No. 38. The tow left Bridgeport about 7 a. m. of the day mentioned, and at about 8 p. m. the Ruth and No. 38 were in trouble; the tow being then off Shippan Point. Both boats took in water to such an extent that they listed sufficiently to dump their deck loads of crushed stone. They then righted, floated away, and were subsequently picked up, more or less injured; the tug in the meantime having proceeded with the remaining two scows, which were not injured.

Of the allegations of negligence but three require notice: (1) That the tug did not seek shelter at Norwalk, when off that harbor; or (2) did not turn back for shelter after having passed Norwalk; and (3) the tow was improperly made up.

Herbert Green, of New York City, for appellant.
Frederick W. Park, of New York City, for respondent.

Before COXE, ROGERS, and HOUGH, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). [1] The rules regarding litigation such as this have been plainly and repeatedly stated by this court. The mere fact that a tow receives injury does not render the tug liable; libelant must affirmatively prove negligence, which is not presumed merely because the injury is not otherwise accounted for. The Winnie, 149 Fed. 725, 79 C. C. A. 431. The tug is not an insurer, and is not responsible for a master's error of judgment. The W. E. Gladwish, 196 Fed. 490, 116 C. C. A. 185. Navigators are not to be charged with negligence, unless they make a decision which nautical experience and good seamanship would condemn as unjustifiable at the time and under the circumstances shown. The Nannie Lamberton, 85 Fed. 983, 29 C. C. A. 519. The line of demarcation between error of judgment and negligence is indicated in The E. B. Conine, 233 Fed. 987, 147 C. C. A. 661. The Frederick R. Ives (D. C.) 25 Fed. 447, shows facts quite like this case.

When the Blakeslee left Bridgeport, the wind was light and the Sound smooth. The weather conditions were such as to justify an experienced navigator, exercising ordinary prudence and familiar with ordinary conditions of proposed trip, to start out, having in view the character of his tow. Re McWilliams, 74 Fed. 648, 20 C. C. A. 580. The only harbor of refuge for vessels such as the Blakeslee and her tow between Bridgeport and Greenwich is Norwalk. Norwalk (Green's Ledge) Light was passed at 4:40 p. m. According to records of the nearest weather station (New Haven) the wind had risen to an average of 23 miles per hour between 3 and 4 o'clock. It then moderated, and from 4 to 6 o'clock averaged 20 miles. The Blakeslee had no barometer, but as matter of fact the glass was rising, and it is testified by the government observer that "with a rising barometer and a moderating wind" it would be a reasonable expectation that "the wind (would) die down with the sun, and decrease in its velocity; in fact that is always invariably the rule."

It is shown by uncontradicted evidence that the tow was in no trouble until after 6 p. m. The wind then increased, and at about 7:30 p. m. the master of the Ruth signaled the tug for help. The Blakeslee immediately cast off the towing hawser, and went back to the Ruth, to be told that the wife of the master was frightened and desired to be taken off. The tug captain inquired how much water there was in the Ruth, and was told four inches, a matter confessedly of no importance. The master of the Ruth did not testify, but the captain of No. 38 did, and his evidence is clear to the point that when the towing hawser was thrown off the Ruth "drifted underneath my bow; * * * she went up and down, and she knocked a hole in my bow." This collision with the Ruth was the sole cause of injury to No. 38. The tug, having picked up her hawser, resumed towing, but within half an hour was again signaled, this time by the No. 38. That boat and the Ruth were then filling fast, and listing so that further towage was impossible.

Contrary to expectation, the wind did not decrease after sundown, but rose to an average of 25 miles per hour from 6 to 7; 23 from 7 to 8; and 26 from 8 to 9. We incline to think that there were squalls of higher rate on the Sound, although the average velocity at water

level was probably less than that observed at New Haven, where the recording instruments are 150 feet above sea level. The Ruth and No. 38 were substantially similar vessels; the other two boats were a little larger. The wind during the whole of the afternoon and up to the time of injury was from west to southwest, and, having regard to the course of the tow, produced a sea on the beam, or a little forward thereof.

[2] Considering the allegations of negligence, it is said that putting the smaller boat ahead was a fault; the vessel with most freeboard should have been on the towing hawser. The evidence does not prove uniform practice in this regard; but, even if error was committed, the direction of wind and sea was such that the leading boats were not any more exposed to the waves than those further astern. There was nothing in the weather compelling or reasonably suggesting to the master the propriety of seeking refuge in Norwalk; it was not a fault to pass that harbor. After 6 p. m. it was no longer possible to turn back to Norwalk; and by 7:30 p. m. it was a shorter trip, and just as safe, to keep on and try for Greenwich.

The controlling fact in this case is that there is no affirmative proof that the injury to the Ruth was proximately caused by the weather. The anxiety of the wife of the Ruth's master caused the tug to lose control of the tow. It was not an error to come back when the Ruth gave signals of distress. Common humanity required as much, if it was reasonably possible; but under the evidence it was foolishness for the Ruth to give the signal. That the slackening of the hawser caused the Ruth to injure No. 38 is proven; it is likely that she injured herself at the same moment, for, if there were only four inches of water in her at 7:30 p. m., it seems impossible to account for her being in the same condition as the No. 38 at 8 p. m., unless the collision between the two boats injured both.

However this may be, libelant cannot recover without affirmatively showing some act of negligence on the part of the tug, proximately resulting in injury to his boat. This has not been done, and the decree below is reversed, with costs in both courts.