## THE MARGARET MURRAY.
### THE OVERBROOK.
### No. A-6917.

District Court, E. D. New York.
March 20, 1931.

Foley & Martin, of New York City, for libellant.

Burlingham, Veeder, Fearey, Clark & Hupper, of New York City, for claimant.

BYERS, District Judge.

The libellant's barge Margaret Murray was taken light from Gowanus on January 25, 1924, by the tug Brinton to the Pennsylvania stake boat OX, and there held with other light barges to be made up into a tow. This was around 4:00 P. M., although the hour is not clearly fixed.

About 9:30 that night, the tow was assembled, of eleven barges in three tiers, four, four and three, the Murray being the starboard boat, second tier.

The claimant's tug Overbrook took the tow in charge, bound for South Amboy, and the libel was filed to recover damages said to

have been sustained by the Murray, caused by pounding in the tow, during the passage.

The report of survey held two weeks later indicates the following damage: Top log badly gouged; ditto first strake below; ditto fourth strake below. The foregoing and the port rail required renewal as stated in the report. New planks were needed, and side required searching and caulking in wake of damage.

The foregoing is consistent with the nature of the libellant's claim.

The weather conditions prevailing at the time the tow was removed from the stake boat are asserted to have been such that it was negligence on the part of the tug to undertake the movement at all.

The testimony of the tug's captain is, that, when the Murray was at the stake boat, she was in shelter. At that time, he says there was a flood tide, and weather fair. The wind was from the west, shifting to northwest, and the average wind velocity at the Whitehall building during the hours involved in making ready and accomplishing the trip to South Amboy was shown to be as follows:

8 P. M. to 9 P. M. westerly wind....... 48 to 42 miles
9 P. M. to 10 P. M. westerly wind...... 50 " 74 "
10 P. M. to 11 P. M. westerly wind...... 50 " 58 "
11 P. M. to 12 M. northwesterly wind... 60 " 69 "
12 M. to 1 A. M. northwesterly wind... 46 " 53 "

The testimony for the libellant is that five hours were consumed in the passage (ordinarily requiring an hour or so), and for the claimant, two hours. The average of these is seen to be three and one-half hours, which would fix the hour of arrival at about 1:00 A. M. on January 26th.

Also the average wind velocity at the stake boat is estimated at from 10% to 15% below the above figures.

Storm warnings had been hoisted the day previous and apparently continued. On the 25th, there was no lack of visibility, and there was no snow or rain.

The bargee testified that he discovered the damage on January 26th, and that the fenders on the port side had been lost, and all the damage was confined to that side of the barge, there being none on the bow or stern. That he replaced fenders twice on the port side, during the passage to the Kills, and, when so doing, observed damage to the port rail; also that no damage had been suffered before or after January 25th and prior to the survey.

The captain of the Overbrook insisted that, with a light tow, and the wind in the quarter which has been shown, the maneuver was proper, but that, with a loaded tow, or easterly wind, the contrary would have been the fact. It will be seen that the depth of water, to starboard, on the way to the Kills, tended to diminish, and that the effect of the westerly and northwesterly wind of the intensity shown was to raise a sea which would affect the barges in the weather berth. Indeed, the captain of the tug admits that there were white-caps from the shoals near Black Tom, but no considerable seas.

It is concluded that he assumed more than the ordinary hazard involved in a towage operation, when he took this barge from what he admits was a position of shelter, under the conditions here shown; that his decision would fall within the reasons for condemnation laid down in The Clarence L. Blakeslee (C. C. A.) 243 F. 365, and was not unlike a similar display of negligence discussed in The Salutation (D. C.) 239 F. 421. The Jumbo, 1926 A. M. C. 1705, is to be distinguished, because there the barge was found to be unseaworthy, and there is no such evidence attempted here to be shown.

The libellant may take the usual decree, with costs.

If the foregoing be deemed an insufficient compliance with Admiralty Rule 46½ (28 USCA § 723), findings and conclusions may be settled on notice.