1010

CAMPOS v. CURTIS BAY TOWING CO.
OF PENNSYLVANIA et al.

No. 59.

District Court, E. D. Pennsylvania.
July 20, 1945.

William K. Given, Jr., and Samuel B.
Fortenbaugh, Jr., of Shields, Clark, Brown
& McCown, all of Philadelphia, Pa., for
libellant

Joseph W. Henderson and Harrison G.
Kildare (of Rawle & Henderson), all of
Philadelphia, Pa., for respondent Curtis
Bay Towing Co.

Otto Wolff, Jr., of Philadelphia, Pa., for
Moran Towing & Transp. Co.

BARD, District Judge.

This is a libel in admiralty brought by
Julio Ribeiro Campos, owner of the bark
Foz do Douro, against Curtis Bay Towing
Company of Pennsylvania, operator of the
Tug H. S. Falk, and Moran Towing and
Transportation Company, Inc., operator
of the Tug Nancy Moran, for damages
caused by collision of the Nancy Moran
with the Foz do Douro on April 10, 1943
on the Delaware River off the entrance of
the Delaware and Chesapeake Canal. At
the conclusion of libellant's testimony the
Court of its own motion directed that the
libel be dismissed as to the Curtis Bay Tow-
ing Company of Pennsylvania, operator of
the H. S. Falk.

On the afternoon of April 10, 1943 the
Portuguese bark Foz do Douro, after
having been aground on the Pea Patch
Shoal, in the Delaware River, was floated
by the combined efforts of the tugs Nancy
Moran and H. S. Falk. Under the direction
of Commander Eugene C. Kelly, a Dela-
ware River pilot on board the Foz do
Douro, the tugs began a towing operation
to place the bark at a safe anchorage.

The Nancy Moran took a hawser ap-
proximately 200 feet in length from her
stern towing bitt to a bitt on the starboard
bow of the Foz do Douro and the H. S.
Falk took a line from the stern of the bark.
The line from the stern was thrown off
shortly after the towage began and the
H. S. Falk did not participate thereafter
in the towage. The course was east south-
east with the bark following the course of
the Nancy Moran on a hawser. A brisk
following wind from the northwest striking
the masts, rigging and furled sails of the
bark provided enough motive power to per-
mit the bark to maneuver independently
of the tug.

The towage continued uneventfully for
about twenty minutes, the Nancy Moran
dead ahead of the Foz do Douro, with the
two vessels following a straight course at
about four miles per hour. Suddenly the
Foz do Douro began to gather headway and
sheered to the starboard. In an attempt to
correct this sheer, the Nancy Moran ported
her rudder and hooked up her engines full
speed ahead. This maneuver brought the
towing hawser across the bow of the bark
and placed the tug off the port quarter.
Despite these efforts, the sheer remained
unbroken and the bark began to pull ahead
of the tug. As the bark pulled ahead,
the Nancy Moran swung on the taut hawser

in an arc centered at the bow of the bark until the stern of the tug collided with the port quarter of the bark about 60 feet from her stern. The master of the tug ordered the towing hawser cut while there was still about 60 feet between the vessels. The deckhand slipped when he swung the axe and he was unable to cut the hawser until the very moment when the collision occurred or just prior thereto. Upon severance of the hawser, the tug sprang away from the bark. The Foz do Douro then maneuvered to a safe anchorage without further assistance from the Nancy Moran.

 An action by a tow against her tug for injuries caused by the tug is a suit ex delicto and not ex contractu. The Syracuse, 12 Wall. 167, 79 U.S. 167, 20 L.Ed. 382; The J. P. Donaldson, 167 U.S. 599, 17 S.Ct. 951, 42 L.Ed. 292, and, as in the ordinary tort action, the burden of proving negligence and that this negligence was a proximate and contributing cause of the injury rests upon libellant. Stevens v. The White City, 285 U.S. 195, 52 S.Ct. 347, 76 L.Ed. 699; The Lizzie D. Shaw, 3 Cir., 47 F.2d 820; The Clarence L. Blakeslee, 2 Cir., 243 F. 365. The tug is not an insurer of the safety of her tow, but has the duty to exercise such reasonable care and maritime skill as prudent navigators employ in the performance of similar services. Stevens v. The White City, supra; The Lizzie D. Shaw, supra; Delaware Dredging Co. v. Graham, D.C.E.D.Pa., 43 F.2d 852.

The furled sails, masts and rigging of the bark offered considerable resistance to wind, and the brisk following wind over the stern enabled the bark to proceed at approximately five knots per hour independently of the motive power of the tug. Under these circumstances it was recognized that if the H. S. Falk would take a line from the stern of the bark or if the bark would be permitted to proceed stern-first under the motive power of the wind with the Nancy Moran taking a line from the bow of the bark and following it to the anchorage, that the towage could be made with greater safety. These alternative methods of towage would have permitted the tugs to control, to a greater degree, any sudden movement of the bark which might be caused by the wind.

Commander Kelly, the pilot on board the Foz do Douro, was in charge of the towing operation, The Civilta and The Restless, 103 U.S. 699, 26 L.Ed. 599, and it was his duty to direct the operation of the bark and to interfere and direct the operation of the tug if the tug failed to use reasonable care or exercise proper maritime skill under the circumstances. The Shubert, D.C.E.D.Pa., 45 F. 497. The Foz do Douro was not a dumb tow. It had a full crew and a competent pilot on board and had independent motive power. It was therefore the duty of the bark's pilot to use every available facility of the bark to assist in breaking the sheer. The Willowpool, 2 Cir., 65 F.2d 385; The Jacob Brandow, D.C.S.C., 39 F. 831. Yet the helmsman on the bark testified that Kelly gave no order after the sheer began to port the rudder of the bark which would have materially assisted the tug in its efforts to break the sheer.

Commander Kelly's failure to adopt one of the alternative methods of towage, presumably in the interest of economy or speed, and his failure to direct the use of the bark's rudder to help break the sheer may have been negligence having material relationship to the collision for which the Foz do Douro should assume responsibility. The China, 7 Wall. 53, 19 L.Ed. 67; The Helen, 2 Cir., 5 F.2d 54; Standard Oil Co. of New Jersey v. United States, S.D. Ala., 27 F.2d 370. However, a determination whether Commander Kelly was negligent and whether this negligence, if any, was a proximate cause of the collision is not necessary in this opinion.

Libellant urges that, without regard to the cause of the backward arc movement of the tug, the master of the tug did not exercise reasonable care and the maritime skill of a prudent navigator in that he failed to cut the hawser in time to avoid the collision. When the sheer of the bark began, it was incumbent upon the Nancy Moran to correct the sheer by turning to port and pulling full speed ahead, and it was her duty to continue these efforts so long as it was possible to do so and still avoid the collision. It was apparent that the tug, with her engines running full speed ahead, would forge ahead clear of the bark the instant the hawser could be cut. The master of the Nancy Moran gave the order to cut the hawser when the tug was approximately 60 feet from the port quarter of the bark. While in the act of cutting the hawser with an axe the deckhand slipped and fell to the deck and the hawser was thereupon cut at or about the moment when the collision occurred. Libellant urges that the master of the tug should have anticipated the pos-

sibility that the deckhand might slip and that he was negligent in not allowing sufficient time for cutting the hawser in the light of that possibility.

Precisely when the moment had arrived for cutting the hawser was a question for the master of the Nancy Moran to determine in the exercise of his judgment as an experienced navigator. The narrow line of demarcation between negligent and non-negligent error of judgment is expressed in The Eli B. Conine, 2 Cir., 233 F. 987, at page 988: " 'Lack of care under the circumstances,' which is negligence, is rarely willful or reckless; it is usually error of judgment. But the converse is not true—that every error of judgment is negligence. The error must be measured by the standards of conduct and business knowledge furnished by the evidence and by the experience of which even courts can take cognizance without direct testimony. If the error, viewed from that standpoint, is such as would not have been committed by a reasonable man, reasonably skilled in his occupation, it is negligence." When thus tested, the delay in ordering the cutting of the hawser cannot be considered negligence. The exercise of judgment by the master of the Nancy Moran in determining the exact moment when the order should be given was that of a reasonable man skilled as a mariner. If the deckhand had not slipped and the hawser cut immediately after the order was given, no one could have quarreled with the timeliness of the master's decision. It was only in the light of after events and in the exercise of hindsight that libellant charges the master with negligence.

There remains only the question of whether negligence can be imputed to the Nancy Moran from the fact that her deckhand slipped and fell when he first attempted to cut the hawser. The stern deck of the Nancy Moran was wet from spray thrown over the three foot freeboard by the brisk wind and the pull of the hawser caused by the starboard sheer of the bark gave the Nancy Moran a sharp list to the starboard. There is no evidence to indicate that the deckhand, who had adequate experience or anyone else on board the tug was guilty of any negligent act contributing to his fall. His fall must be regarded as a fortuitous and unexpected event which, although it directly contributed to the accident, cannot form the basis of a compensatory action.

Libellant has not sustained its burden of proving any negligence on the part of respondent which was a contributing factor in the collision. Stevens v. The White City, supra. The libel must therefore be dismissed as against Moran Towing and Transportation Company, Inc., respondent.

I make the following special findings of fact:

1. Libellant Julio Ribeiro Campos, a citizen and resident of the Republic of Portugal, was on April 10, 1943, and still is, owner of the Bark Foz do Douro, of Portuguese registry.

2. Respondent Moran Towing and Transportation Company, Inc., is a corporation existing under the laws of the State of New York, having its office and principal place of business at 17 Battery Place, in the City and State of New York, and was at all times pertinent hereto operator of the Tug Nancy Moran.

3. The Foz do Douro is a steel hulled, four masted bark measuring 260 feet in length by 43 feet in breadth, without motive power of any kind other than her sails On April 10, 1943 her top-masts were unstepped and her sails furled. She was in all respects seaworthy, properly manned by a Portuguese crew, and properly equipped and supplied. She was heavily loaded, down 13 feet at the bow and 17 feet 3 inches at the stern.

4. The Tug Nancy Moran is a modern diesel electric tow boat with engines of 1000 horsepower capable of a forward speed of at least eleven knots per hour. She is 94 feet long, 22 feet wide and 10½ feet deep.

5. On the afternoon of April 10, 1943, the Foz do Douro was floated by the Nancy Moran and the H. S. Falk from the place where she lay fast aground by the stern on the southern edge of Pea Patch Shoal in the Delaware River off the mouth of the Delaware and Chesapeake Canal.

6. After the Foz do Douro had been floated, the Nancy Moran and the H. S. Falk undertook to tow the bark from the southern edge of the Pea Patch Shoal to a prescribed anchorage nearby.

7. The operation of towing the bark to the anchorage was under the direction of Commander Eugene C. Kelly, a Delaware River pilot, who was on board the bark and acting as her pilot.

8. At the commencement of the towing operation the H. S. Falk, upon orders from

Commander Kelly, took a line from the stern of the bark and made it fast to her bow. Shortly after the towing operation began this line was cast off at Kelly's direction. The H. S. Falk did not participate thereafter in the towing operation but continued to follow the bark and was about 500 feet off her stern until after the collision occurred.

9. The Nancy Moran took the Foz do Douro in tow upon a towing hawser approximately 200 feet in length attached to the stern towing bitt of the Nancy Moran and to a bitt on the starboard bow of the Foz do Douro. The course was east southeast.

10. During the entire course of the towage the wind velocity was 28 to 30 miles per hour from the northwest following over the stern quarter of the bark. The tide was flood either at low speed in the northwest direction or at slack.

11. Approximately twenty minutes after the towing operation began the Foz do Douro suddenly sheered to her starboard. The Nancy Moran endeavored to correct the sheer of the bark by porting her rudder and then by increasing her forward speed.

12. The Foz do Douro continued to sheer and ran ahead of the Nancy Moran. The Nancy Moran swung in an arc at the end of the taut towing hawser until the stern of the Nancy Moran collided at an angle with the port quarter of the bark about 60 feet from the stern about five minutes after the sheer began, causing damage to the plates of the bark.

13. At all times between the moment the bark began to sheer and the collision the towing hawser was taut and the engine of the Nancy Moran was running ahead.

14. When the stern of the Nancy Moran was approximately 60 feet from the port quarter of the bark, the master of the Nancy Moran ordered her deckhand to cut the towing hawser. The deckhand slipped on the wet steel deck when he swung the axe to cut the hawser. He immediately regained his footing and cut the hawser just at the time or immediately before the tug struck the Foz do Douro. The interval of time between the master's order to cut the hawser and the actual cutting of the hawser was but a few seconds.

15. When the towing hawser was severed the Nancy Moran pulled away sharply from the bark.

16. After the collision and severance of the hawser the Foz do Douro proceeded under her own headway for about ten minutes and maneuvered to a proper anchorage without assistance.

### Conclusions of Law.

1. The master of the tug Nancy Moran was not negligent in his determination of the moment when the order to cut the hawser connecting his vessel and the Foz do Douro should be given under the circumstances.

2. The delay in cutting the hawser due to the fall of the deckhand after the order was given was not caused by negligence of the Nancy Moran or of any member of her crew.

3. Libellant has not sustained the burden of proving that the collision of the Nancy Moran and the Foz do Douro was caused to any degree by negligence of the Nancy Moran.

4. The libel should be dismissed as against Moran Towing and Transportation Company, Inc., operator of the Tug Nancy Moran.