**Mario H. RECHANY, Plaintiff,**

v.

**E. J. ROLAND, as Commandant, United States Coast Guard, Defendant.**

United States District Court
S. D. New York.

Oct. 12, 1964.

Zwerling & Zwerling, New York City, for plaintiff; Irving Zwerling, New York City, of counsel.

Robert M. Morgenthau, U. S. Atty., for defendant; Louis E. Greco, Atty. in Charge Admiralty & Shipping Section, Dept. of Justice, and Erwin W. Rossuck, Atty., Admiralty & Shipping Section, Dept. of Justice, of counsel.

FREDERICK van PELT BRYAN, District Judge.

Plaintiff Rechany is a merchant mariner and formerly senior assistant purser, tourist class, aboard the S.S. Independence owned and operated by the American Export Lines. He brings this suit pursuant to § 10 of the

Administrative Procedure Act, 5 U.S.C. § 1009, to review the action of an administrative agency—the Commandant of the Coast Guard—in suspending his merchant mariner's documents.[1]

On September 30, 1960 specifications of "misconduct" as tourist class senior assistant purser aboard the Independence were filed against Rechany before the Coast Guard charging (1) that he "wrongfully" opened with a passkey the door of a stateroom then occupied by a woman passenger and (2) that he had "wrongfully" entered the stateroom. There was an extensive hearing on the charges before a Coast Guard Examiner in New York at which Rechany was represented by counsel.

On the first specification the Examiner found that Rechany had "wrongfully" opened the door of the stateroom as charged and held that he was guilty of "misconduct" in so doing. He dismissed the second specification for failure of proof.

On April 14, 1961 the Examiner issued an order suspending Rechany's mariner's documents for one month, the suspension not to be effective, however, unless other acts of misconduct were established during a six months period of probation. The Examiner's order was affirmed on appeal by the Commandant of the Coast Guard on September 6, 1962.

While on its face the effect of the suspension order seems relatively innocuous, it had serious consequences for Rechany. Though he had an otherwise unblemished record of eighteen years service with the American Export Lines he was discharged as a result of the order and thus lost all of his substantial seniority and pension rights. He has found it difficult, if not impossible to secure comparable berths since. He therefore seeks to set aside and vacate the order of suspension and thus to clear his record and vindicate himself. He contends that the order was arbitrary, capricious and unreasonable and not supported by substantial evidence on the record as a whole.

Both sides have moved for summary judgment on the record before the Coast Guard. The following facts are undisputed and, in substance, are those found by the trial examiner:

As Senior Assistant Purser, Tourist Class, aboard the Independence, Rechany's responsibilities included the promotion of social relations among the tourist passengers, their entertainment and their welfare and safety. He had a bar account against which he was authorized to charge drinks for passengers. He also had a passkey to the tourist class staterooms to use when appropriate.

About 10:30 p. m. on the evening of August 9, 1960 in the course of his duties he joined a party of Spanish-speaking passengers in the Torraino lounge. The party consisted of three couples and an extra man. About 11 p. m. he suggested that another Spanish-speaking passenger, a Mrs. Pierre, who was travelling alone, be invited to join the party so as to fill it out. All agreed. Rechany then proceeded to Mrs. Pierre's stateroom to invite her to the party.

The Examiner's findings as to what occurred when he arrived at the stateroom are as follows:

Rechany knocked at the door of the stateroom but received no answer. He knocked again. He heard a noise in the room and was not sure whether it was a voice or a chair so he knocked again. Then he heard a door closing. He took out his passkey and opened the door "to

[1]. Defendant suggests that there may be a question as to jurisdiction and venue. The suggestion is without merit. This court has jurisdiction under the Administrative Procedure Act, 5 U.S.C. § 1001 et seq., to review administrative actions of the Coast Guard. See United States v. Aarons, 310 F.2d 341, 347 (2d Cir. 1962); Word v. United States, 223 F. Supp. 614 (S.D.Ala.1963); Provenzano v. Richmond, 1960 Am.Mar.Cas., 985 (S.D. N.Y.1960). Venue properly lies here where the initial action was taken under 28 U.S.C. §'1391 (1948), as amended, 28 U.S.C. § 1391 (Supp. IV, 1962). See 1962 U.S.Code Cong. & Adm.News, pp. 2784–2790.

the extent of his right arm." He saw Mrs. Pierre in bed and invited her to the party. She declined. He closed the door and rejoined the party in the Torraino Room. "It was later learned that another crewman was inside the room and concealed himself in the clothing closet on hearing someone knock on the door." ·

The Examiner made the further finding that Rechany "did not open the door to Mrs. Pierre's room because of *any* concern for her safety, but rather to invite her to a party." (Emphasis added.) He then found as an ultimate fact that Rechany "wrongfully did open with a passkey" the door to the Pierre stateroom and concluded that he was guilty of misconduct in so doing under the first specification filed against him.

■■ The standard to be applied in reviewing administrative action under § 10(e) of the Administrative Procedure Act, 5 U.S.C. § 1009(e), is whether, considered as a whole, the record in the case[2] contains substantial evidence to support the findings of the agency. Universal Camera Corp. v. NLRB, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951); see Word v. United States, supra, 223 F.Supp. at p. 617.

The evidence to support the Examiner's findings here consisted of Rechany's own testimony, the testimony of an FBI agent as to statements which Rechany made to him when the vessel returned to New York, and opinion evidence by the chief purser of the Independence and a staff captain of the American Export Lines as to whether Rechany was justified in

opening the door of the stateroom under the circumstances. The Examiner properly rejected evidence given by the Pierre woman and the seaman who was alone with her in her room when Rechany knocked as totally unworthy of belief. The Pierre woman's wildly distorted complaint to the captain about Rechany was obviously designed as a defensive measure to cover up what she thought Rechany might have discovered about the highly ambiguous position in which she and the seaman found themselves. She and the seaman were patently in collusion to concoct a story which would protect them and place Rechany in an unfavorable light, and, indeed, appear to have prepared their testimony in this proceeding together.

There is only one relatively simple issue in this case. It is undisputed that Rechany opened the Pierre woman's stateroom door with his passkey after knocking three or four times and hearing noises in the room, saw the Pierre woman in bed and apparently alone in the stateroom and then closed the door without entering the room and left to return to his duties. Moreover, the hearing examiner made no finding that Rechany was untruthful when he stated that he knocked at the stateroom door for some ten or twelve minutes before he opened it.

■■ The key finding of the Examiner is that Rechany did not open the door because of *any* concern with the Pierre woman's safety but rather to invite her to a party. It is upon this specific finding of fact that the Examiner based

---

2. At the argument plaintiff's counsel suggested that the entire record on which the Commandant had based his decision had not been submitted to the court. He claimed that there were additional opinions favorable to the plaintiff in the Coast Guard file. The Commandant at my direction submitted to me two additional papers from the Coast Guard files claiming, however, that they were not part of the record but merely interoffice memoranda.

After reading these papers I am satisfied that they are not part of the record

but merely staff memoranda prepared pursuant to 46 C.F.R. § 1.10(b) (1) (iv). Cf. Morgan v. United States, 313 U.S. 409, 422, 61 S.Ct. 999, 85 L.Ed. 1429 (1941); Norris & Hirshberg, Inc. v. SEC., 82 U.S.App.D.C. 32, 163 F.2d 689, 693 (1947), cert. den., 333 U.S. 867, 68 S.Ct. 788, 92 L.Ed. 1145 (1948); 2 Davis, Administrative Law, pp. 44–8, 57–62.

These memoranda have not been considered on this motion and will be sealed and placed in the file of the case to be opened only by direction of the court.

his ultimate finding that Rechany's act in opening the door was "wrongful." This in turn was the only basis upon which the Examiner concluded that Rechany was guilty of misconduct.

Thus, the question here is whether the finding that Rechany did not open the door because of *any* concern for the Pierre woman's safety finds any support in the record. For if it does not, the ultimate finding that his conduct was "wrongful" and the conclusion that he was guilty of misconduct as defined by the Coast Guard Regulation 46 C.F.R. § 137.05–20(a) (1) are wholly without foundation. That regulation in pertinent part defines misconduct as "human behavior which a reasonable person would consider to constitute a failure to conform to the standard of conduct which is required in the light of all the existing circumstances."

On the record as a whole I do not find any substantial evidence to support the Examiner's key finding of specific fact that Rechany opened the door not because of any concern for the Pierre woman's safety but rather to invite her to a party.

Rechany testified on direct examination that he knocked on the door four times over a period of some 10 or 12 minutes and in between the knocks heard noises like a chair moving and a door closing and what may have been a voice. It is undisputed that it was part of his duties to look after the passengers' safety, and he gave the following testimony as to why he opened the door:

"Q. Now, what prompted you to use this key, Mr. Rechany, on August 9, 1960?

"A. I heard these noises inside the cabin. I would like to know what's going on, whether she had been attacked, she might have been having convulsions, she might have been sick, she might have been several reasons—

"Q. —That is the reason, Mr. Rechany, why you opened the door and called into the room?

"A. That is correct."
This was Rechany's thinking when he opened the door with the passkey. He did not step into the room or take his hand off the door knob.

"Q. What did you do?

"A. I called from the outside, and I asked her, 'Mrs. Pierre, are you all right,' and the answer was, 'Yes, I'm all right.'

"Q. Did you explain why you were at the door.

"A. That's right, because I came —

"Q. Would you kindly tell us what you said?

"A. I said, 'I came down to invite you to a party that we were having up in the lounge, some Spanish folks.' So, with that she answered, 'Don't bother me, I have retired for the night.' With that, I excused myself, locked the door, came up on 'A' deck and joined the group."
He said that the Pierre woman was "sort of upset" which was quite understandable in view of the seaman then in her room, concealed in the clothes closet, who was later caught coming out of the room.

Rechany's testimony was uncontradicted and I see nothing in the record which casts doubt on its truthfulness. The interview which the FBI agent had with Rechany when the vessel returned to New York is in no way inconsistent with what Rechany said at the hearing. In the interview Rechany gave a brief account of what had occurred on that evening but the full details do not appear to have been explored by the agent and there is no indication that he asked Rechany to state specifically what Rechany said to the Pierre woman and what she said to him.

The trial examiner, however, apparently relied heavily on testimony elicited from Rechany on cross-examination by the investigating officer as indicating that his direct testimony as to his mo-

tives for opening the door was untrue. This, the least favorable testimony given by Rechany, was as follows:

"Q. Isn't it true, Mr. Rechany the reason you opened the door with the pass key was to ask Mrs. Pierre to the party; isn't that right?

"A. That is the main idea.

"Q. That was the reason you opened the door with the key?

"A. Yes.

"Q. Not because you were concerned about whether she had a heart attack or something like that; isn't that true?

"A. That must be secondly.

"Q. That is an afterthought?

"A. No, sir. You sometimes do things spontaneously without thinking or checking them."

The testimony just quoted, when read in context is not inconsistent with the testimony that Rechany gave on direct. Nor does it furnish any basis for a finding that he had *no* concern for the Pierre woman's safety when he opened the door but did so *solely* to invite her to the party. This testimony merely indicates that when Rechany put his passkey in the stateroom door he had no clear-cut idea of what he might find, or that more than one thought was going through his head at the time. It was quite a natural and reasonable state of mind under the circumstances. Plainly, it was quite proper for him to issue the invitation to the party to the Pierre woman after she had told him she was all right and the invitation also furnished a reasonable explanation for why he had come to the stateroom and knocked at the door in the first place.

There was a specific finding that there was no moral turpitude involved here and no improper motive has ever been attributed to Rechany. Nor is there any suggestion that he had any personal reason for insisting that the Pierre woman attend the party. The invitation to her was solely in pursuance of his duties as purser to provide entertainment for the passengers and promote social relations between them.

When there was no response to Rechany's repeated knocks at the door for a period of ten minutes or so despite intermittent noises in the room, there was reason for Rechany to suspect that something might be amiss. Indeed, as it later turned out, something was, since the seaman in the room had no business to be there and concealed himself in the closet when Rechany knocked.

Rechany could scarcely be expected to make an accurate diagnosis of the situation. There was enough to make him suspicious that something might be wrong and not enough to make him sure. He was concerned for the Pierre woman's well being and safety when he opened the door but still had the invitation to the party in mind when he found she was all right. I see no inference more unfavorable to him than this that can be drawn from his testimony and that inference is quite ·insufficient to support the finding made that his *sole* purpose in opening the door was to invite the Pierre woman to the party.

The opinion evidence given by the chief purser of the Independence and by staff captain Kaminski of American Export Lines, as to the proper standards of conduct of an assistant purser under the circumstances does not indicate that Rechany's conduct was wrongful. The chief purser testified in substance that in his view Rechany's conduct in using his passkey was proper under the circumstances. Captain Kaminski thought that the circumstances called for an exercise of judgment and characterized Rechany's conduct as an error of judgment. He conceded, however, that if "in the purser's opinion there were sound promenading [sic] from the room or violent sounds that would indicate an investigation, he should have entered the room, yes."

■ Thus, given the circumstances here and Rechany's own thinking when he used the passkey, the worst that can

84

be said is that he made an error of judgment. A mere error of judgment cannot be said to be "wrongful" in view of the distinction, well recognized in admiralty and elsewhere, between an error in judgment and wilful or negligent misconduct. See Meyer v. Dollar S.S. Line, 43 F.2d 425, 426 (W.D.Wash.1930), aff'd, 49 F.2d 1002 (9 Cir. 1931). Cf. The Clarence L. Blakeslee, 243 F. 365 (2 Cir. 1917); The Eli B. Conine, 233 F. 987 (2 Cir. 1916); Atlantic Gulf & Pacific Co. v. The Barney Turecamo, 202 F.Supp. 31 (S.D.N.Y.1962); In re Petition of American Dredging Co., 141 F.Supp. 582, 587 (E.D.Pa.1956), rev'd on other grounds, sub nom. Kernan v. American Dredging Co., 355 U.S. 426, 78 S.Ct. 394, 2 L.Ed.2d 382 (1958).

■ A ship's officers have a high duty of care for the safety of passengers. See Voltmann v. United Fruit Co., 147 F. 2d 514, 518 (2 Cir. 1945); Ludena v. Santa Luisa, 112 F.Supp. 401, 407 (S.D. N.Y.1953). There was agreement that there are circumstances in which it would be quite proper for a purser to use his passkey. One of these circumstances is where the safety of a passenger is involved. Here concern for the Pierre woman's safety was certainly *one* of the factors which motivated Rechany to open the stateroom door. It may also be true that his original motive for going to the Pierre stateroom still remained. But it does not follow that his motives were wrongful because they were mixed. Quite the contrary. "Motives are notoriously susceptible of being misunderstood and hard to prove or disprove." N.L.R.B. v. Houston Chronicle Pub. Co., 211 F.2d 848, 854–855 (5 Cir. 1954).

Even if such a combination of motives existed here it plainly negatives a finding to the effect that Rechany opened the stateroom door *solely* for one motive or purpose—to invite the Pierre woman to a party and not out of concern for her safety. Substantial evidence to support that specific finding is wholly lacking.

The ultimate finding that Rechany's conduct was "wrongful" was based entirely on that specific finding. There is thus no substantial evidence to support the ultimate finding either. In turn, there is no substantial evidence from which it can be concluded that Rechany was guilty of misconduct even within the nebulous definition of 46 C. F.R. § 137.05–20(a) (1) (the Coast Guard Regulation).

The defendant's motion for summary judgment is denied in all respects and the plaintiff's motion for summary judgment is granted. The order of the Examiner directing the suspension of plaintiff's merchant mariner's documents, as affirmed by the Commandant of the Coast Guard, will be vacated and set aside and the case remanded for that purpose. Judgment will be entered accordingly.

Settle order on notice.