Frederick Innis Wood INGHAM, Plaintiff,

v.

Willard J. SMITH, Commandant, United States Coast Guard, Defendant.

No. 66 Civil 3662.

United States District Court
S. D. New York.

Sept. 20, 1967.

Zwerling & Zwerling, New York City, for plaintiff; Sidney Zwerling, New York City, of counsel.

Robert M. Morgenthau, U. S. Atty. for Southern District of New York, Louis E. Greco, Attorney in Charge Admiralty &

138

Shipping Section, Department of Justice, for defendant; Peter Martin Klein, New York City, of counsel.

## OPINION

HERLANDS, District Judge:

On November 1, 1966, plaintiff commenced this action, in the nature of mandamas brought under the Administrative Procedure Act, Title 5, U.S.C.A., Section 703, to declare the defendant's order of August 17, 1966, affirming the revocation of plaintiff's Merchant Mariner's Document, "to be null and void".

The complaint alleges that plaintiff was a deck maintenance man on board a merchant vessel of the United States, the SS Flying Enterprise II; that, according to a charge filed against him on June 24, 1965, pursuant to Title 46, U.S.C.A., Section 239, plaintiff possessed marihuana on May 29, 1964, while he was on the vessel at the port of San Juan, Puerto Rico; and the second specification of the charge accused him of having purchased marihuana on or about May 25, 1964 at or about Panama City, Canal Zone.

The complaint further alleges that a hearing was held before a United States Coast Guard Examiner who, on December 2, 1965, issued an order revoking plaintiff's Merchant Mariner's Document. The Examiner found plaintiff guilty of the specification of having possessed marihuana but exonerated him of the specification of having purchased marihuana.

On December 10, 1965, plaintiff filed a notice of appeal with the Commandant of the United States Coast Guard. On February 21, 1966, plaintiff's request for a temporary Merchant Mariner's Document pending administrative appeal was denied. Oral argument before the Coast Guard Board of Appeals was had on March 29, 1966. Defendant's decision and order affirming the Examiner's decision and order of revocation were rendered on August 17, 1966. The complaint seeks to nullify the order of August 17, 1966 as "illegal, erroneous, arbitrary, capricious and completely contrary to the evidence and law produced by the plaintiff".

On February 7, 1967, plaintiff applied and argued in this Court for an order directing defendant to issue a temporary Merchant Mariner's Document that would remain in effect until such time as a final decision has been rendered by this Court in this action. On February 13, 1967, Judge Constance Baker Motley of this Court, granted plaintiff's motion for the issuance of such a temporary document. Presumably, plaintiff has been working under that temporary document.

By motion argued before this Court on September 5, 1967, the Government has moved, pursuant to Federal Rules Civil Procedure 56, for a summary judgment. Plaintiff orally cross-moved for summary judgment. In his affidavit sworn to August 10, 1967, plaintiff's attorney opposes defendant's summary judgment motion and supports his own oral cross-motion. The Government has filed the appropriate statement under Rule 9(g) of the General Rules of this Court whereas the plaintiff has failed to file a counter-statement as required by that rule. Consequently, as provided in Rule 9(g), "All material facts set forth in the statement required to be served by the moving party [the Government] will be deemed to be admitted" by plaintiff. According to the Government's 9(g) statement, "the only material facts are the decision and order of defendant and the contents of the administrative record". In his affidavit, plaintiff's attorney states, (page 2) "plaintiff relies entirely on the certified administrative record that will be submitted to the court".

In elaborating the various grounds for the cross-motion, plaintiff's attorney, in his affidavit, page 2, submits the following points:

1. That a vital portion of the record has been omitted in that, on March 29, 1966, he argued plaintiff's appeal before a three member board at United States Coast Guard Headquarters; that each of

the three members submitted a written opinion on which defendant based his decision; and that "these decisions should be part of the record so that the court will have a fair basis upon which it can make its decision".

2. That defendant's decision was arbitrary, capricious and unsupported by substantial evidence and, hence "plaintiff is entitled to judgment as a matter of law".

In a thirteen-page memorandum opposing defendant's summary judgment motion and supporting plaintiff's cross-motion, plaintiff's attorney makes the following specific points:

1. That Government Exhibits 1, 2, 3 and 4, reports of chemical analyses, were never produced and made part of the official record; that plaintiff was never given a copy of said exhibits; and that any action taken by defendant with respect to said exhibits was "beyond the scope of the defendant's powers" and defendant had "no power to correct the mistakes and errors made on the hearing level".

2. That seven objections made by plaintiff's attorney and noted on the record "were never ruled upon".

3. That the Hearing Examiner's decision is illogical and arbitrary because "both specifications 1 and 2 must stand or fall together" and since plaintiff was exculpated of the second specification charging purchase of marihuana, he should have been acquitted of the first specification charging possession.

4. That "there were so many inconsistencies in the testimony of the five Customs Officers that the Examiner could not render a decision of revocation".

5. That "there are no exhibits in evidence showing what the chemical analyst showed" especially since "the exhibits number 1, 2, 3 and 4 were never made part of the record"; that "there is a conflict as to just where the gleanings from plaintiff's pockets were supposed to have

been taken, and as to who had possession of the gleanings".

6. That "defendant never produced the written confession the plaintiff was supposed to have signed. This certainly would have been the best evidence".

We now turn to a detailed consideration of each of plaintiff's contentions.

The Court has examined the 264 pages that constitute the complete record of proceedings on appeal before the Commandant and the Commandant's decision on appeal. Document A sets forth the charge of "misconduct" which contains the two specifications as already indicated: the first, charging wrongful possession of marihuana on or about May 29, 1964; the second, charging the purchase of marihuana on or about May 25, 1964.

Document B, consisting of 29 pages, covers the proceedings on July 1 and 21, 1965, September 16, 24 and 30, 1965. The record shows that a hearing was held pursuant to Title 46, U.S.C.A., Section 239. Plaintiff was represented by counsel and the Hearing Examiner advised plaintiff of his various rights. The case against plaintiff was presented by Investigating Officer Lieutenant R. V. Ricard. According to the opening statement of Lieutenant Ricard, the drug was found on board ship and traces of the drug were found in the pockets of plaintiff's clothing.

The Government submitted applications to take oral depositions from four witnesses in San Juan, Puerto Rico; plaintiff's attorney objected to the taking of the depositions. The objection was overruled. Plaintiff's attorney was given permission to attend and to cross-examine orally the deponents. The four witnesses involved were: R. A. Torrens, Customs Agent in Charge, Francisco G. Colon, Customs Agent, E. R. Gilmore, Customs Port Investigator and Graham Castillo, Chemist in Charge, all of San Juan. It was agreed that any objections to questions during the depositions should be made at the time but that rul-

ings on the objections were reserved for the Examiner.

At the adjourned session of July 21, 1965, the Government applied for the taking of three additional oral depositions of witnesses at San Juan, there being no objection interposed by plaintiff's attorney.

At the adjourned hearing of September 16, 1965, transcripts of the following seven depositions were turned over to the Investigating Officer and to plaintiff's attorney, as follows: Pedro J. Alberio, Octavio D. Pinol, E. R. Gilmore, Gonzalez Colon, Rafael A. Torrens, Graham Castillo, Juse. Martinez Mateo.

At the adjourned hearing of September 24, 1965, the Government offered in evidence the depositions of the seven foregoing deponents. Plaintiff's attorney made no objection. The Government rested. There was discussion about the Castillo deposition (Government's Exhibit 6) which was supposed to have attached to it a photocopy of Customs Form 6418 but which was not attached.

It was stipulated that a certain paper, dated March 18, 1965, supposedly Bureau of Customs Order to Destroy and Certificate of Destruction for Forfeited, Abandoned, or Unclaimed Merchandise, reads: "6.88 grams of marijuana wrapped in a piece of paper and a piece of adhesive tape".

At the adjourned session of September 30, 1965, the Hearing Examiner referred to the depositions of Gilmore, Alberio and Pinol, who testified that a package was found taped to the back of the middle drawer of a desk which plaintiff admitted was under his control. Plaintiff's attorney argued that Torrens' deposition stated that there had been no confession or admission before he came into the case at 10:30 P.M.

The defendant did not testify nor produce witnesses on his own behalf.

The Government argued that any discrepancies in the depositions may be attributable to the fact that sixteen months had elapsed from the time of the incident to the time when the witnesses were examined but that there was no conflicting testimony as to the essential fact that plaintiff actually had marihuana.

Document B–1, consisting of twenty pages, read and initialed by Alberio on September 13, 1965, is his deposition taken on August 15, 1965. Plaintiff's attorney was present and he cross-examined the deponent. In substance, Alberio testified that on May 29, 1964 he and Gilmore searched plaintiff's quarters and found a substance that looked like marihuana in the middle of the center drawer of the desk that plaintiff admitted belonged to him; that at the time of the search plaintiff had in his hands a roll of white adhesive tape which was the same type of tape used to affix the substance to the back of the desk drawer. When the package was found in the drawer, plaintiff said that he did not know who put it there.

Document B–2 is the deposition of Pinol taken on August 16, 1965 and signed by him on September 13, 1965. The gist of his testimony was that, on May 29, 1964 he, together with Alberio and Gilmore, found a package with adhesive tape in the back part of the desk drawer. The package looked like marihuana. Gilmore was the person who actually found the package. It was attached to the back of the drawer with a piece of adhesive tape and the roll from which the adhesive tape came was subsequently found in plaintiff's locker. Plaintiff denied owning the package. They found residue in plaintiff's pants pockets; the residue was sent to the chemist for analysis. It turned out to contain marihuana.

Pinol was present when plaintiff said "he had been smoking marihuana for 5 years, but he did not want to make a written statement. Later he decided to make a written statement and confessed to Mr. Torrens that he was the owner of the marihuana found behind the drawer of the desk." (page 4)

Plaintiff told them "he bought the marihuana from one of the guys in Pana-

ma that pulled the ship across the channel". (page 4) Plaintiff and his roommate stated that plaintiff was the only one who used the particular desk where the marihuana was found. Pinol corrected his testimony as to where the roll of tape was found, saying that it was found under the plaintiff's pillow, not in the locker. Pinol testified that when he first entered the plaintiff's room, he saw the roll of tape in plaintiff's hands but that later it was found under plaintiff's pillow.

Gilmore's deposition was taken on August 16, 1965 and signed by him on September 10, 1965. He testified that, when he searched plaintiff's room, he discovered in the middle drawer of his desk a substance taped on the back of the drawer, which substance was later established by the chemist to be marihuana. When he confronted plaintiff with this, "he denied any knowledge whatsoever or ownership of the merchandise" (page 1). Later, he found "in the pockets of some of his clothing * * * a substance which when submitted to a test was identified as residue of marihuana" (page 2). Subsequently, plaintiff made the statement to Gilmore "that this marihuana was his" (page 2). Plaintiff signed a typed statement to that effect (page 2) in the presence of Gilmore (page 5). When the agents went into the plaintiff's room, plaintiff "was in the process of putting up pin up pictures using tape similar to the one found with the marihuana attached to his desk" (page 2). The chemist report indicated that the substance in the taped package and in the clothing was marihuana (page 3). While they were conducting the search, plaintiff put the tape away in one of the desk drawers (page 10). Gilmore reiterated that plaintiff confessed to him (pp. 16, 17, 18, 19). The tape found in plaintiff's desk drawer was "the same color and the same width" as the tape that held the package to the back of the drawer (page 19).

The deposition of Colon was taken on August 16, 1965 and signed by him on September 13, 1965. According to his testimony, there was hearsay evidence that the Customs Port Investigators "had obtained some information that Frederick Ingham [plaintiff] had been seen with various other crew members smoking marihuana aboard" (page 2). A search of plaintiff's clothing disclosed residue in the pockets which turned out, upon analysis, to be marihuana. Plaintiff admitted to Torrens "that the marihuana in the package was his and that he had bought it in Panama for $5.00" (page 2). The confession of plaintiff to Torrens was in the form of a written statement that plaintiff signed (page 7).

The deposition of Torrens was taken on August 17, 1965 and signed by him on September 13, 1965. The deposition shows that plaintiff admitted to Torrens "that he was the owner of that marihuana" (page 2). Subsequently, plaintiff stated that he had purchased the marihuana in Panama for $5.00 (page 2).

The deposition of Castillo was taken on August 17, 1965 and signed by him on September 13, 1965. This deposition establishes that Castillo was the Government chemist in charge of the laboratory; that the substance in the package wrapped with adhesive tape, upon analysis, turned out to be 6.88 grams of marihuana (page 1). Castillo produced the official report of his test, Customs Form 6415, dated May 29, 1964. The Hearing Examiner asked plaintiff's attorney whether he cared to see the report and stated that the Government is going to make a photocopy of the report and attach it to the testimony of Castillo as an exhibit. Plaintiff's attorney stated on the record that he had no objection (pp. 1–2). Plaintiff's attorney cross-examined Castillo as to the nature of the test. It appears that the sample which was tested was destroyed on May 10, 1965 on order from the Collector of Customs and that this fact is embodied in another customs form dated March 18, 1965, the photocopy of which was to be appended to the record as Government Exhibit 2,

with the consent of plaintiff's attorney. (page 5) Attached to the Castillo deposition is a photocopy of the report of the United States Customs Laboratory, dated May 29, 1964, showing that the particular package contained 6.88 grams of marihuana. Exhibit 2 attached to the Castillo deposition is the other customs form showing that the sample was destroyed pursuant to orders sometime in May, 1965.

The deposition of Mateo was taken on August 17, 1965 and signed by him on September 10, 1965. This deposition shows that Mateo was an analytical chemist employed in the U. S. Customs Laboratory; that he examined the residue found in plaintiff's clothing and also residues obtained from left and right hand fingernails. The residue in the clothing turned out to be marihuana but the results were negative as to the fingernail material.

Document G is the decision which was rendered December 2, 1965 by the Hearing Examiner. It contains twenty separately numbered Findings of Fact, two Conclusions of Law and an opinion that runs to over four single spaced typewritten pages. It orders the revocation of plaintiff's Merchant Mariner's Document on the ground that plaintiff, on May 29, 1964, did wrongfully have in his possession aboard the vessel, SS Flying Enterprise II, 6.88 grams of marihuana. It exonerates plaintiff of the second specification relating to the purchase of marihuana.

The original decision was served on plaintiff on December 3, 1965 (Documents H and I).

The plaintiff's notice of appeal and request for a copy of the trial minutes were duly served upon the United States Coast Guard.

The grounds for appeal were stated to be:

"1. Decision rendered is contrary to the weight of the evidence herein.

2. Hearing Examiner considered facts not in evidence.

3. Hearing Examiner before hearing all the facts and evidence pre-determined and pre-judged the person charged."

Under date of December 22, 1965, a copy of the trial transcript was forwarded to plaintiff's attorney (Document K). Plaintiff's request for the issuance of a temporary document was denied on February 21, 1966 (Document R).

Plaintiff's request for oral argument was granted under date of February 24, 1966 (Document U).

Under date of March 2, 1966 (Document V), plaintiff's attorney enclosed a summary of the four points of his appeal argument which, in substance, were that:

I. Reports of chemical analysis were never produced and made part of the official record;

II. Objections made on the record during deposition were never ruled on by the Hearing Examiner;

III. The Hearing Examiner's decision is illogical and arbitrary in view of the dismissal of Specification No. 2; and

IV. The Hearing Examiner prejudged the case, considered evidence not in the record, and the testimony is so vague and contradictory as to be incapable of supporting an order of revocation.

Document X is a stenographic transcript of the oral argument on March 29, 1966 before a United States Coast Guard Board of Appeals. The panel consisted of three officers: James H. Molloy, Chief Hearing Examiner, Captain Clinton J. Maguire, representing the Chief of Staff, and William F. Mehling, representing the Chief of the Legal Division. The transcript of the oral argument consists of seventy pages.

Under date of August 17th, Vice Admiral, United States Coast Guard, Acting Commandant P. E. Trimble affirmed the

order of the Examiner (Document Y). His decision consists of Findings of Fact and a detailed opinion that considered all of the plaintiff's arguments.

## PLAINTIFF'S ARGUMENT THAT CERTAIN FOUR EXHIBITS WERE NEVER PUT INTO EVIDENCE AND WERE NEVER MADE PART OF THE RECORD

This argument is addressed to four reports, two of which are analyses of substances (in this case marihuana) by two Customs chemists (Castillo and Mateo). The other two are reports by the same chemists of the destruction of the contraband. Castillo's deposition, taken in San Juan, is Exhibit 6. Mateo's San Juan deposition is Government's Exhibit 7.

Plaintiff's attorney has argued that, whereas these four reports were supposed to have been attached to the aforesaid two depositions, they were, in fact, "never put in evidence * * * there is no evidence in this record as to what either of these reports showed" and that he never received copies of the reports (Document X of the Administrative Record, pp. 8–10).

A scrutiny of the deposition proceedings shows that the reports of analyses were supposed to have been marked Exhibits 1 and 2 to be attached to the Castillo deposition; and that the reports of destruction were supposed to have been marked Exhibits 3 and 4, to be attached to the Mateo deposition. At the outset, it is significant to note that plaintiff was represented by the same attorney at all stages of the proceeding—at the opening of the hearing in New York, by personal appearance in San Juan at the actual taking of the depositions, at the subsequent hearing in New York, and on appeal.

There is no question about the fact that when Castillo's and Mateo's depositions were taken in San Juan, the four reports in question were produced. It was agreed by counsel that photocopies of them could be substituted for the

originals and attached to the transcripts of the depositions which were sent to the Hearing Examiner in New York. When the hearing reconvened in New York, the seven San Juan depositions (including Castillo's and Mateo's) were offered in evidence by the Government and were received in evidence by the Hearing Examiner with explicit statements of "no objection" by plaintiff's counsel. In the course of the hearing at least one of the reports, not affixed to the depositions, was produced and identified as Government's Exhibit 3.

 It is perfectly clear from a study of the record that all four reports in question were available for inspection by plaintiff's attorney at the time the depositions were admitted into evidence. Thus, at page 11 of Document X, transcript of oral argument before the Appellate Tribunal, it appears that copies of the reports were produced and at page 15, thereof, it appears plaintiff's attorney was not only furnished with copies of the exhibits but was given the opportunity to present "anything further in connection with this point" that he cared to. During the same oral argument, plaintiff's attorney admitted, on the record, that he had been present in San Juan when the depositions were taken and that he did "see the exhibits at that time" (page 53) and that he was "aware * * * that the exhibits were available at New York" and he "asked for them" (page 54).

In view of the incontrovertible fact the plaintiff's attorney saw the four reports when they were admitted as part of the Castillo and Mateo depositions at San Juan and in view of the additional circumstance that he was afforded ample opportunity to present anything further that he cared to in connection with this particular point, there is not the slightest possibility of any prejudice to plaintiff resulting from the non-attachment of the four reports to the Castillo and Mateo depositions. Plaintiff's argument is rejected as specious.

The flimsy character of the argument is accentuated by indisputable fact that at no point during the proceedings did plaintiff's attorney challenge the proof that the substances involved in the seizures were marihuana. The plaintiff's argument, predicated on the numbering of the reports as Exhibits 1 through 4 while the depositions themselves were numbered 1 through 7 is, as the Commandant characterized it, nothing but "a quibble".

Consequently, there is substantial and persuasive evidence considering the record as a whole to support the Commandant's finding and conclusion that the four exhibits in question were produced and were made part of the record.

## PLAINTIFF'S ARGUMENT THAT SEVEN CERTAIN OBJECTIONS MADE DURING THE TAKING OF THE DEPOSITIONS WERE NEVER RULED ON BY THE HEARING EXAMINER

One objection was made during Gilmore's depositions, three during Pinol's, one during Alberio's and two during Castillo's. Plaintiff's attorney argues that these objections "were never ruled on" although they were "reserved" for the Hearing Examiner's rulings "after the depositions had been returned" (Document X of the Administrative Record, pp. 17, 18, 65). When asked by the Coast Guard Appellate Tribunal how the failure to rule on any particular objection "prejudiced" his "case in any material manner", plaintiff's attorney replied "at this juncture it would be impossible for me to venture a guess" (Document X, pp. 18, 19). Plaintiff's attorney did not renew his objections at the hearings in New York, claiming that there was no need for such renewal.

■ When each of the seven depositions was separately offered in evidence, plaintiff's attorney was given opportunity to object and, on each occasion, he replied "no objection". At no time during the hearings did plaintiff's attor-

ney offer any objection to either the reception of the depositions or any parts thereof; and he permitted the Hearing Examiner to announce the close of proceedings on the record without mention of objections. It is crystal clear that any right or privilege to have the Examiner rule on the objections was waived by the conduct of plaintiff's attorney during the hearings, as is pointed out by the Commandant's decision (Document Y of the Administrative Record).

Aside from the question of waiver and dealing with the merits of the objections as such, we find the following:

During the Alberio deposition (Document B–1, p. 19), plaintiff's counsel objected to one of the questions on the ground that it was leading. An examination of the record shows there was not the remotest possibility of any prejudice to plaintiff when the witness answered the question.

During the Pinol deposition (Document B–2, p. 3), an objection was made to one of the questions as leading. There was no substance to this objection. At page 18, there was a technical objection to the witness' use of notes to refresh his recollection. An examination of the record shows that there was no possibility of any prejudice or impropriety. At page 19, an objection was made to the form of the question. Here, too, there was no possibility of any prejudice.

During the deposition of Gilmore (Document B–3, p. 2), there was an objection to a question, without a statement of the ground of the objection, but presumably the basis was its leading character. The record shows that there was not the slightest possibility of prejudice inherent in the question.

During the deposition of Castillo (Document B–6, p. 6), an objection was made to a question as leading. No possibility of prejudice is discernible from the question. At page 7, an objection stated without any grounds was directed to a question probably because of its

form as calling for a possibility. No possible prejudice can be perceived with respect to the question or its answer.

It is concluded that the argument based upon the seven objections that were not ruled upon is completely devoid of merit.

## PLAINTIFF'S ARGUMENT THAT DISMISSAL OF THE SECOND SPECIFICATION NECESSARILY REQUIRED DISMISSAL OF THE FIRST SPECIFICATION

The second specification, alleging the purchase of marihuana in Panama, was dismissed whereas plaintiff was found guilty under the first specification charging him with possession of marihuana. Plaintiff's argument is fallacious for a number of reasons. The second specification was dismissed because the Investigating Officer advised the Hearing Examiner that the only evidence as to the purchase was contained in plaintiff's written confession which, however, for some reason was never produced. The confession may have been destroyed or lost; and according to the record, no one knew what happened to it.

In view of the dismissal of that specification, there is no occasion for the Court now to recapitulate other evidence that might have established plaintiff's purchase.

■■ The first specification dealing with possession was supported by substantial evidence: the discovery of a package of marihuana in the desk drawer in plaintiff's room, which drawer was used exclusively by plaintiff; the discovery of gleanings of marihuana found in the pockets of plaintiff's clothing; and several oral admissions by plaintiff as to his ownership of the package containing the marihuana and as to his smoking marihuana for a considerable period of time.

Plaintiff's argument predicated on the dismissal of the second specification is groundless.

■■

## PLAINTIFF'S ARGUMENT THAT "A VITAL PORTION OF THE RECORD HAS BEEN OMITTED" (PLAINTIFF'S ATTORNEY'S OPPOSING AFFIDAVIT, P. 2)

■ Plaintiff's attorney asserts that the appellate tribunal, consisting of three persons who heard the appeal on March 29, 1966, submitted for each of them "a written opinion on which the defendant based his decision" and that "these decisions should be part of the record so that the court will have a fair basis upon which it can make its decision. * * * the court should have before it the opinion and recommendation of the three men who heard the oral argument and made their recommendation to the defendant". The Government correctly takes the position that any advisory opinions, such as described by plaintiff's attorney, are not part of the administrative record. Rechany v. Roland, 235 F.Supp. 79, 81, footnote 2 (S.D.N.Y.1964); Norris & Hirshberg v. Securities and Exchange Commission, 82 U.S.App.D.C. 32, 163 F.2d 689, 693 (1947) cert. denied 333 U. S. 867, 68 S.Ct. 788, 92 L.Ed. 1145 (1948); United States v. Morgan, 313 U.S. 409, 422, 61 S.Ct. 999, 85 L.Ed. 1429 (1941).

The documents referred to by plaintiff's attorney are not part of the Administrative Record; the Court should not have required that they be produced; and they have not been considered in determining the disposition of this matter.

However, upon the oral argument of the motion and before there was adequate opportunity to determine this legal point, the Court did suggest that the Government make available to the Court a copy of the United States Coast Guard Memorandum from the Permanent Board to Hear Oral Argument to the Chief Counsel. A certified copy shows that two of the three members of the Board were of the opinion that there is substantial evidence to sustain the finding of the Hearing Examiner. The third

member of the Board did not concur with the recommendation by the two Board members but stated the following:

"If in an authoritative draft of HQ decision certain aspects of this case (to which this member called attention and stressed in joint conference post the oral argument) can be logically and legally obviated, this member may then be inclined to alter his position."

The foregoing is simply mentioned to dispel any aura of mystery sought to be created by plaintiff.

PLAINTIFF'S ARGUMENT THAT THE HEARING EXAMINER PRE-JUDGED THE CASE; THAT THE HEARING EXAMINER CONSIDERED EVIDENCE NOT IN THE RECORD; AND THAT THE RECORD CONTAINED SO MANY INCONSISTENCIES THAT IT WAS IMPOSSIBLE FOR THE HEARING EXAMINER TO DETERMINE "JUST WHO DID WHAT AND WHERE IT WAS DONE"

These contentions are frivolous. The accusation of pre-judgment is entirely unsupported by any competent or even hearsay evidence.

The assertion that the Examiner considered evidence not in the record is an uncorroborated charge without one iota of supporting proof.

The argument premised on inconsistencies in the record consists of an exaggerated and distorted emphasis of minor variations of proof and the usual inconsistencies when seven witnesses are called upon to testify as to events occurring approximately sixteen months prior to the date of their depositions. There is no basic conflict as to the fundamental facts. The substantial unanimity of the witnesses as to the hard core of the case takes on added significance in light of the objective circumstances that the marihuana package was found in plaintiff's desk drawer in his room, that his pockets contained marihuana gleanings, that the chemical tests established the identity of the marihuana and that the appellant admitted that the marihuana was his.

A close and careful study of the entire record demonstrates, most persuasively, that the evidence of plaintiff's guilt is substantial in the light of the record as a whole. Accordingly, the Court grants defendant's motion for summary judgment and denies plaintiff's cross-motion for summary judgment. So ordered.